**Marlene C. SHIELDS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–539.

United States Court of Veterans Appeals.

Nov. 2, 1995.

Marlene C. Shields, pro se.

Mary Lou Keener, General Counsel, Atlanta, GA; Norman G. Cooper, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and Ralph G. Davis, Washington, DC were on the brief for the appellee.

Before FARLEY, IVERS, and STEINBERG, Judges.

IVERS, Judge:

Marlene C. Shields, the widow of veteran Leverne D. Shields, appeals a May 16, 1994, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to accrued benefits and entitlement to an earlier effective date for dependency and indemnity compensation (DIC) benefits. *Marlene Shields in the Case of Leverne D. Shields,* BVA 94——— (May 16, 1994); Record (R.) at 4–10. The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, we will affirm the May 1994 decision of the BVA.

## I. Factual Background

The veteran served on active duty in the United States Navy from March 1945 to July 1946, from April 1948 to January 1950, and from November 1955 to November 1957, and in the United States Air Force from November 1959 to October 1974, when he retired. R. at 15–20, 26.

The veteran suffered myocardial infarctions in September 1976 and July 1977. *See* R. at 70. He filed an application in September 1977 with a VA regional office (RO) seeking service connection for a heart condition. R. at 27. In June 1978, the RO denied service connection for arteriosclerotic heart disease, post myocardial infarction. R. at 39–40. In October 1985, the veteran sought to reopen the heart condition service connection claim on the basis of an in-service electrocardiogram. R. at 44–45. The RO did not reopen the claim in November 1985. R. at 47. The veteran died on September 18, 1987, as a result of right ventricular failure

due to or as a consequence of ischemic heart disease. R. at 51.

The veteran's widow, the appellant in the instant appeal, filed an application for burial benefits in September 1987. R. at 53. She did not respond to a question on the application form inquiring whether she was claiming that the veteran's cause of death was due to service. *Ibid.* The RO awarded the appellant a $150.00 burial benefit "based on non-service-connected death." R. at 62.

On March 7, 1990, the appellant filed an application with the RO for DIC benefits, death pension, and accrued benefits. R. at 65–68. By a rating decision dated April 30, 1990, the RO awarded service connection for the cause of death. R. at 70–71. In that decision, the RO stated:

> [C]areful and sympathetic consideration of all of the evidence now allows a determination that reasonable probability exists, after consideration of the [electrocardiogram] findings in service, the fact that the veteran had myocardial infarction within 2 years of separation from active duty, and given the findings of severe coronary artery disease on catheterization in September[ ] 1977, the veteran's coronary disease had its onset in service.

R. at 71. The effective date for DIC benefit payments was April 1, 1990. R. at 77.

The appellant disagreed with the effective date of the DIC benefits award, arguing that the effective date should have been the date when the veteran had first filed for service connection in 1977. R. at 82. In an April 1992 VA Form 1–9 (Appeal to BVA), the appellant argued that the 1978 and 1985 rating decisions denying service connection for a heart condition were "obviously erroneous, as Service–Connected Death was recognized and granted 01 April 1990." R. at 106. She also indicated that, based on the advice of an employee of the Yuba–Sutter County, California, Veterans Service Office, she had not filed an application for DIC benefits immediately after the veteran's death. *Ibid; see also* R. at 107–08. Her representative further argued that the appellant's application for burial benefits constituted a notice of death and that VA was then obligated under 38 C.F.R. § 3.150(b) to forward the appropriate application form to the appellant, an individual with apparent entitlement to pension or DIC benefits. R. at 113.

The appellant testified at a hearing before a traveling section of the Board on August 6, 1993. R. at 147–58. On May 16, 1994, the Board denied entitlement to accrued benefits and entitlement to an effective date earlier than April 1, 1990, for DIC benefits. *Shields,* BVA 94——, at 5; R. at 8.

## II. Analysis

### A. *DIC Benefits and Accrued Benefits*

The surviving spouse of a veteran who has died from a service-connected disability after December 31, 1956, may be entitled to DIC. 38 U.S.C. §§ 1310, 1311. The veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (1994). If a claimant files an application for DIC benefits within one year after the veteran's death, then the effective date is the first day of the month in which the veteran died. 38 U.S.C. § 5110(d)(1). If no such application is filed or could be construed to have been filed within one year after the veteran's death, the relevant effective date provision is 38 U.S.C. § 5110(a), which states: "Unless specifically provided otherwise in this chapter, the effective date of an award based on ... a claim for ... dependency and indemnity compensation[ ] or pension[ ] shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." An exception to 38 U.S.C. § 5110(a) is found at 38 U.S.C. § 5110(g), which applies only where a new act or administrative regulation is involved. *See Gold v. Brown,* 7 Vet.App. 315, 320 (1995); *Viglas v. Brown,* 7 Vet.App. 1, 3 (1994). Since no new act or administrative issue is involved here, 38 U.S.C. § 5110(g) is not for application in the instant appeal.

■ Under 38 U.S.C. § 5121(a)(2)(A), a veteran's spouse also may receive any periodic monetary benefits that were due to the veteran during the last year of life but not paid under laws administered by the Secretary to which an individual was either enti-

tled at death under existing ratings or decisions or based on evidence in the file at the date of the individual's death. *See* 38 C.F.R. § 3.1000(a)(1)(i) (1994). These benefits are known as "accrued benefits." 38 U.S.C. § 5121(a). The application for accrued benefits must be filed within one year after the veteran's death. 38 U.S.C. § 5121(c); 38 C.F.R. § 3.1000(c) (1994); *see Quiamco v. Brown*, 6 Vet.App. 304, 307 (1994); *Romeo v. Brown*, 5 Vet.App. 388, 392 (1993). A DIC claim filed within one year after the veteran's death "shall also be considered" a claim for accrued benefits. 38 U.S.C. § 5101(b)(1); *see Isenhart v. Derwinski*, 3 Vet.App. 177, 179 (1992).

### 1. Burial Benefits Application Form

■ In the instant case, the appellant did not file an actual application for DIC benefits or accrued benefits within one year after the veteran's death. She argues, however, that her application for burial benefits, filed in the same month as the veteran's death, put VA on notice that she was also seeking additional benefits and that VA was thus obligated to provide her with the requisite forms for her to apply for those benefits. However, in *Herzog v. Derwinski*, 2 Vet.App. 502, 503 (1992), the Court held that an "application for burial benefits should not be deemed an application for DIC." *See also Thompson v. Brown*, 6 Vet.App. 436, 437 (1994) (application for DIC benefits and application for flag, individually or together, "are not the functional equivalent of an application for burial benefits"). Thus, the appellant's application for burial benefits was not in and of itself an application for DIC benefits or accrued benefits.

### 2. Informal Claim

The appellant's application for burial benefits may not be construed as an informal claim for accrued benefits. Under 38 C.F.R. § 3.155(a) (1994), any communication or action indicating an intent to apply for a VA benefit may be considered an informal claim as long as such informal claim identifies the benefit being sought. *See Quarles v. Derwinski*, 3 Vet.App. 129, 136 (1992); *Crawford v. Brown*, 5 Vet.App. 33, 35 (1993); *see also*

*Servello v. Derwinski*, 3 Vet.App. 196, 199 (1992) (regulation does not require claimant to identify *specifically* benefit being sought; correct query in *Servello* was whether any communication or action by claimant "evidenced 'a belief' by the veteran that he was entitled to total disability benefits by virtue of unemployability"); *cf. Landicho v. Brown*, 7 Vet.App. 42, 50 (1994) (motions by survivors to be substituted in Court proceedings arising from appeals by individuals who had died during pendency of appeals in Court, as well as notices of such individuals' death filed in Court by such survivors during the pendency of the appeal, were sufficient notice to Secretary of informal claim for accrued benefits). Indeed, the appellant did not respond to a question appearing on the VA burial benefits application form pertaining to whether she was claiming that the veteran's death was due to a service-connected disability. The appellant has also stated subsequently that she did not intend to apply for accrued benefits or DIC benefits at the time of her application for burial benefits because she had relied on the advice of a veterans' service representative. Since the appellant did not intend to apply for such DIC benefits or accrued benefits and since she did not identify any benefits other than the burial benefits at the time of her application for burial benefits, the burial benefits application form cannot be construed as an informal claim for DIC benefits or accrued benefits.

### 3. Statutory Outreach Provisions

■ Under 38 U.S.C. § 7722(c), the Secretary is required to "distribute full information to eligible veterans and eligible dependents regarding all benefits and services to which they may be entitled under laws administered by [VA]." VA also owes "to the maximum extent possible, aid and assistance ... to ... eligible dependents ... in the preparation and presentation of claims under laws administered by [VA]." 38 U.S.C. § 7722(d); *see Smith v. Derwinski*, 2 Vet. App. 429, 431–33 (1992). An "eligible dependent" is defined in 38 U.S.C. § 7721(b)(2) by reference to the definition of an "eligible person" appearing in 38 U.S.C. § 3501(a)(1), which provides in pertinent part that an "eligible person" is "the surviving spouse of any person who died of a service-connected dis-

ability." 38 U.S.C. § 3501(a)(1)(B). At the time that the appellant applied for burial benefits, however, the veteran's death had not yet been found to be service connected. Therefore, the appellant could not have been an "eligible dependent" within the scope of the outreach provisions of 38 U.S.C. § 7722(c) or (d) at the time of her application for burial benefits. *See also Thompson,* 6 Vet.App. at 438 (since veteran's death was not service connected and since record did not show any other qualifying conditions under 38 U.S.C. § 3501(a)(1) at time of veteran's death, Secretary's duty under 38 U.S.C. § 7722(c) did not extend to veteran's widow). As a result, the Board was not obligated to furnish the appellant, at that time, the application forms for DIC benefits or accrued benefits.

### 4. 38 C.F.R. § 3.150(b)

■ Finally, VA was not obligated to furnish forms to the appellant pursuant to 38 C.F.R. § 3.150(b) (1994). That regulation provides that "[u]pon receipt of notice of death of a veteran, the appropriate application form will be forwarded for execution by or on behalf of any dependent who has *apparent entitlement* to pension, compensation, or dependency and indemnity compensation." *Ibid.* (emphasis added). At the time that the appellant filed her application for burial benefits, there was no reason for VA to believe that the appellant had "apparent entitlement" to accrued benefits (i.e., compensation, *see Zevalkink v. Brown,* 6 Vet.App. 483, 489–90 (1994) (en banc) (survivor's claim for accrued benefits is derivative from veteran's claim)) or to DIC benefits. The veteran's death was not service connected at that time. Moreover, although the April 1990 RO rating decision that eventually awarded service connection appears to have been predicated on the same facts that had been in the veteran's file at the time of his death, the RO's rationale for awarding service connection at that time was based on a reweighing of the evidence. *See* R. at 71 ("[C]*areful and sympathetic consideration* of all the evidence now allows a determination that *reasonable probability* exists ... [that] the veteran's coronary disease had its onset in service." (emphasis added)). Indeed, the rating decision

specifically noted that the evidence on file during the veteran's lifetime when he had applied for service connection had not indicated the existence of heart disease during service or within a presumption period. *Ibid.*

Additionally, there was no "apparent entitlement" to pension either, since there was no showing, minimal or otherwise, that the appellant met the net worth limitations for the receipt of death pension benefits. *See* 38 U.S.C. § 1541(a), (g), 1543(a)(1); 38 C.F.R. §§ 3.3(b)(4), 3.23 (1994) *Martin v. Brown,* 7 Vet.App. 196, 199 (1994), *reconsidering* 6 Vet.App. 272; *cf. Lyman v. Brown,* 5 Vet. App. 194, 197 (1993) (where there was no showing that VA knew or should have known of claimant's status with regard to reinstatement of pension benefits, 38 U.S.C. § 7722(c) did not impose general duty on VA "to notify eligible persons of *possible* entitlements" (emphasis added)). We note once again that the appellant consciously refrained (albeit on the alleged, incorrect representations of a veterans' service representative) from seeking benefits other than burial benefits in 1987. In the absence of a showing of apparent entitlement to pension, compensation, or DIC benefits at the time that the appellant notified VA of the death of the veteran, VA did not breach the obligation under 38 C.F.R. § 3.150(b) to furnish the requisite forms.

### B. *Claim for Earlier Effective Date for DIC Benefits*

■ The appellant argues that she is entitled to an earlier effective date for DIC benefits because the two rating decisions denying service connection for the veteran's heart condition during his lifetime were the product of clear and unmistakable error (CUE). *See* 38 C.F.R. § 3.105(a) (1994). The Court does not need to reach the merits of whether those rating decisions were clearly and unmistakably erroneous. *See Fugo v. Brown,* 6 Vet.App. 40, 44 (1993) (claimant must raise CUE claim with "some degree of specificity" and must give "persuasive reasons ... as to why the result would have been *manifestly* different but for the alleged error" unless the error was "CUE on its face"). Although the Board reached this issue in its discussion of the appellant's argu-

ments, whether or not those rating decisions were clearly and unmistakably erroneous would not affect the effective date of the appellant's DIC benefits. A determination of CUE in a prior rating decision causes that rating decision to be amended or revised. *See* 38 C.F.R. § 3.105(a); *Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc). However, for the reason that follows, revising the June 1978 or November 1985 rating decisions would still not create a "hook" upon which the appellant could hang her earlier effective date argument.

In her arguments to the RO and the Board, the appellant placed great reliance on the Court's decision in *Satchel v. Derwinski*, 1 Vet.App. 258 (1991). That case does not control the outcome in the instant appeal, although not necessarily because of the reasons provided by the Board. In *Satchel*, an RO denied service connection for a veteran's heart condition in 1961. *Id.* at 259. The veteran died in 1965, and several days later, the veteran's widow filed a claim for DIC benefits. *Ibid.* The Court held that both the 1961 rating decision denying service connection for the veteran's heart condition and the 1965 rating decision denying service connection for the cause of the veteran's death for purposes of the DIC claim were "undebatably erroneous." *Id.* at 260. Notably, the Court did not award benefits retroactive to the 1961 rating decision that had denied service connection for the veteran's heart condition during his lifetime. *Ibid.; see also* 38 C.F.R. § 20.1106 (1994) ("issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime"). Rather, the *Satchel* Court held that DIC benefits were payable retroactive to the 1965 rating decision that had denied the claimant's prior DIC claim. *Ibid.* In the instant appeal, however, there is no prior DIC claim which can serve as a basis for an earlier effective date. The appellant's first and only claim for DIC benefits was in March 1990. Thus, the appellant's CUE argument does not warrant an earlier effective date.

■ The appellant also argued that she was prevented from filing a timely claim for accrued benefits or DIC benefits within one year after the veteran's death by the representations of an employee of the Yuba–Sutter County, California, Veterans Service Office. First, the appellant received this advice from an employee of a local government's veterans' service organization, not from a VA employee. *See also Brown v. Brown*, 8 Vet. App. 40, 43 (1995) (without opining on merits of such an action, Court mentioned that claimant "may look to the representative for recovery" where representative was negligent or at fault) (citing *Robinson v. United States Navy*, 342 F.Supp. 381, 383 (E.D.Pa. 1972)). Second, the Court would nevertheless still be precluded from awarding benefits on the basis of equitable estoppel even if a VA employee had provided the appellant with erroneous advice. *See Owings v. Brown*, 8 Vet.App. 17, 23 (1995); *McTighe v. Brown*, 7 Vet.App. 29, 30 (1994) (statute specifically provides that effective date of DIC benefits award is date of application, and earlier effective date is not allowable under equitable estoppel because payment of government benefits must be authorized by statute) (citing *OPM v. Richmond*, 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990)); *see also Lozano v. Derwinski*, 1 Vet.App. 184, 186 (1991). Consequently, the appellant is not entitled to an earlier effective date on the basis of equitable estoppel.

### C. Board's Terminology

■ Of final note is the Board's determination in its May 1994 decision that the appellant's claims were not well grounded. *Shields*, BVA 94–——, at 2; R. at 5. In *Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994), the Court noted that the use of the term "well-grounded" should be confined to an evidentiary context. "[W]here the law and not the evidence is dispositive, the claim should be denied or the appeal to the BVA terminated because of the absence of legal merit or the lack of entitlement under the law." *Ibid.* (citing FED.R.CIV.P. 12(b)(6) as analogous authority). "However, this imprecision in the use of a term of art is not a basis, in and of itself, for a remand." *Florentino v. Brown*, 7 Vet.App. 369, 370 (1995); *see Giancaterino v. Brown*, 7 Vet.App. 555, 561 (1995). Moreover, the Board's conclu-

sions of law were that the "legal criteria for payment of accrued benefits" and "for an earlier effective date for [DIC]" were not met. *Shields*, BVA 94–——, at 3; R. at 6. Therefore, the Court will not remand to the Board for the issuance of a new decision simply to implement the distinction between a claim that is not well grounded and one that lacks legal merit or entitlement under the law.

### III. Conclusion

Upon consideration of the record, the appellant's brief, and the Secretary's brief, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error which would warrant reversal or remand. We are also satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990). Accordingly, we AFFIRM the May 1994 decision of the BVA.