**Shirley MITSCHER, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 98–502.**

United States Court of Appeals for Veterans Claims.

Oct. 15, 1999.

Theodore C. Jarvi was on the brief for the appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Kathy A. Banfield were on the brief for the appellee.

Before HOLDAWAY, IVERS, and GREENE, Judges.

HOLDAWAY, Judge:

The appellant, Shirley L. Mitscher, widow of veteran Jan E. Mitscher, appeals the January 1998 decision of the Board of Veterans' Appeals (BVA or Board) which determined that she was not entitled to an effective date earlier than October 14,

1993, for an award of dependency and indemnity compensation (DIC). The award of DIC was based on service connection of the veteran's death caused by multiple myeloma. The appellant filed an initial brief and a reply brief arguing that the appellant had filed a claim in 1986 for service connection of her husband's cause of death due to Agent Orange exposure in Vietnam. The appellant also argued that she was entitled to readjudication of her claim pursuant to the Final Stipulation and Order (Stipulation) entered in *Nehmer v. United States Veterans' Admin.,* 712 F.Supp. 1404 (N.D.Cal.1989) (*Nehmer I*). The Secretary responded that the Board's decision denying an earlier effective date had a plausible basis in the record because the appellant's 1986 application for burial benefits was not a formal claim for DIC and the Stipulation did not apply because there had not been a denial of DIC pursuant to 38 C.F.R. § 3.311a [now 38 C.F.R. § 3.309(e) (1998)] prior to October 1993.

On February 16, 1999, the appellant filed a citation of supplemental authority informing this Court that in *Nehmer v. United States Veterans Admin.,* 32 F.Supp.2d 1175 (N.D.Cal.1999) (*Nehmer II*), a federal district court had ruled that VA's position in VA Office of General Counsel Precedent Opinion (G.C.Prec.) 95–15 (1995), dealing with which prior claims for service connection must be readjudicated pursuant to *Nehmer I*, was contrary to the terms of the Stipulation. On March 1, 1999, this Court ordered the appellant to submit a supplemental memorandum addressing (1) how the February 1999 district court order would impact this Court's review of the Board decision currently on appeal, and (2) what remedy, if any, the appellant ought to be afforded in light of the district court's order. The appellant filed a supplemental memorandum arguing (1) that pursuant to *Bailey v. West,* 160 F.3d 1360 (Fed.Cir.1998) (en banc), the one-year period for the appellant to file a formal application for DIC after she had filed an informal claim in 1986 should have been tolled based on VA's representation

that she could not file a claim for service connection for multiple myeloma; (2) that the BVA's denial of her claim was premised on G.C. Prec. 95–15, which had been invalidated by the district court; and (3) that the matter should be remanded for the BVA to readjudicate the effective date issue. The Secretary responded that a remand to apply the law in *Nehmer II* would not affect the disposition of the appellant's case and, therefore, application of the invalidated VA precedent opinion was harmless error. The Secretary argued that because the appellant had not filed a claim for DIC benefits prior to October 1993, the *Nehmer II* decision does not apply. The Secretary also argued that the Court should not apply the principles of equitable estoppel or equitable tolling in this matter.

The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the decision of the Board.

## I.  FACTS

The veteran served on active duty in the U.S. Marine Corps from March 1965 to February 1969. R. at 13. His service included two tours in Vietnam and combat duty. *Id.;* R. at 52. In April 1986, the veteran died of multiple myeloma. R. at 58. On May 13, 1986, the appellant filed a VA Form 21–530, Application for Burial Benefits. On that application form, she checked "yes" in box 9, which asked: "Are you claiming that the cause of death was due to service?" R. at 40. In that box, there is also an annotation that an application form for DIC was sent to the appellant in May 1986. *Id.* A letter dated May 18, 1986, from the VA regional office (VARO) to the appellant, explained that an application form for DIC and pension benefits had been enclosed and that it was necessary for the appellant to file a claim for DIC within one year of the veteran's death in order for DIC to be payable from the date of the veteran's death. R. at 43.

In June 1986, the VARO informed the appellant that it had authorized payment for burial expenses "based on non-service-connected death." R. at 47.

In October 1993, the appellant filed a formal application for DIC. R. at 54–57. In January 1994, the VARO denied her claim for service connection for the cause of the veteran's death. R. at 64–65. In July 1994, the VARO determined that pursuant to recently enacted Agent Orange regulations, the veteran's cause of death was service connected and assigned November 1, 1993, as the effective date. R. at 72. The appellant timely perfected an appeal to the Board. R. at 88, 98. In November 1994, the appellant sent VA a letter stating the following:

[In] May of 1986 I contacted [VA] regarding my husband[']s death. Explained to the individual the circumstances of his death. That he had served two terms in Vietnam and was exposed to Agent Orange. I was told by the individual at [VA] that his death was not military related [and] that I should file a non-service[-]connected claim which was mailed to me and I filed. I then received notification that I and my family, did not qualify for benefits because my husband[']s death was not military related and my income level was too high.

I followed instructions I received from [VA] after my husband[']s death and now you are telling me because I was miss informed [sic] by an individual on your end and the government was also denying responsibility for Agent Orange related deaths, that I am not entitled to back benefits. You are telling me that I took over seven years to file a claim for DIC when in reality [VA] still denied that his death was military related at that time. Not until May of this year did [VA] acknowledge that his death was military related.

I did not wait for seven years to file my claim for death benefits, the government denied responsibility for seven years.

When I received notification from [VA] that my claim had be [sic] accepted and my family qualified for veterans benefits[,] I thought finally something positive.

R. at 86.

At an August 1995 VA hearing, the appellant testified that she had spoken with an employee at the local VARO and had explained to him the circumstances of her husband's death and that she believed his death was caused by exposure to Agent Orange. R. at 103. She then stated that the VA employee had told her that the death was not caused by service because it had happened so many years after service. *Id.* She also stated that the VA employee had told her that if she felt the veteran's death was caused by Agent Orange, then she should file her claim through Dow Chemical because they were the responsible party. *Id.* She denied that the VA employee had sent her any forms to fill out. R. at 105. According to her testimony, she continued to call VA and monitor whether the government had accepted responsibility for Agent Orange causing multiple myeloma. R. at 104. She also stated that she had filed her claim in October 1993 because she had seen in an Agent Orange review flyer, and heard from a VA employee, that multiple myeloma had been added to the list of diseases that were possibly caused by Agent Orange. R. at 105. She stated that VA then sent her an application for DIC. R. at 106. The hearing officer issued a decision denying the appellant's claim for an earlier effective date. R. at 112–14.

An October 1996 letter from the appellant stated that the Supplemental Statement of the Case she had received in September 1996 indicated that she had been sent an application for DIC benefits in May 1986. R. at 138. She stated that while she could not dispute that she had been sent the application, she believed that the VA counselor had sent it to her for non-service-connected pension benefits which she did not qualify for because of

the income limitations. *Id.* She also stated that she wanted "to clarify that [she] was told, by the VA counselor, [that] my husband[']s death was not military related[, and] [i]f I felt Agent Orange was involved, I needed to pursue the class action suite [sic] against Dow Chemical Company." *Id.*

The Board found that the appellant was not entitled to an earlier effective date for payment of DIC. The Board determined that the appellant's October 1993 application for DIC was subject to the Stipulation, but the May 1986 application for service-connected burial benefits was not. R. at 9. The Board noted that there was no indication in the record, prior to October 1993, that the veteran's death was due to exposure from Agent Orange. Also, the Board found that "the record does not reflect that former 38 C.F.R. § 3.311(a) was considered in the denial of service-connected benefits shown by the June 1986 award of non-service-connected burial benefits." *Id.* The Board stated that it had carefully reviewed her claim that she had not filed an application for DIC because of reliance on a representation by a VA employee, but that there was no basis in VA law to permit the appellant to prevail on such a claim. *Id.*

## II. ANALYSIS

A BVA determination regarding whether a formal or informal claim has been filed will be set aside by this Court if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *Westberry v. West,* 12 Vet.App. 510, 513 (1999) (holding that whether an informal claim had been filed required the application of the law to the facts of a case and is reviewed under 38 U.S.C. § 7261(a)(3)(A)); *Butts v. Brown,* 5 Vet.App. 532, 538–40 (1993) (en banc). Generally, the effective date for an award of DIC cannot be set earlier than the date VA received a claimant's application for that benefit. *See* 38 U.S.C. § 5110(a). Pursuant to 38 U.S.C. § 5110(g), the effective date for an award of benefits pursuant to a new VA issuance cannot be earlier than the effective date of the VA issuance. The terms *application* and *claim* are defined by regulation as "a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement to a benefit." 38 C.F.R. § 3.1(p) (1998). Any written communication which indicates an intent to apply for an identified benefit may be considered an informal claim. *See* 38 C.F.R. § 3.155(a) (1998); *see also Rodriguez v. West,* 189 F.3d 1351, 1354 (Fed.Cir.1999). "Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution." 38 C.F.R. § 3.155(a). If an executed application form is submitted to VA within one year after the date it was sent to the claimant, it will be deemed filed on the date the informal claim was received. *See id.* The BVA or VARO must review all the communications in the claims file, after the last final disallowance of the claim, that could be interpreted as a formal or informal claim for benefits. *See Servello v. Derwinski,* 3 Vet.App. 196, 198 (1992). A claim for VA benefits must be submitted in the form prescribed by the Secretary before any benefits can be awarded. *See* 38 U.S.C. § 5101; *see also Jones v. West,* 136 F.3d 1296, 1299 (Fed.Cir.1998).

The appellant initially argues that her 1986 application for burial benefits, on which she indicated that the veteran's cause of death was service connected, should be construed as a formal claim for DIC benefits that would be subject to the Stipulation. Pursuant to *Nehmer II,* any claim for service connection of death or disability, which is later determined to be related to exposure to Agent Orange pursuant to the Secretary's revised regulations, must be readjudicated. Therefore, the determinative question in this matter is whether the appellant filed a claim for service connection of the veteran's death earlier than October 1993.

■ This Court has held that an application for VA burial benefits is not a formal application for DIC. *See Shields v. Brown*, 8 Vet.App. 346, 349 (1995); *Herzog v. Derwinski*, 2 Vet.App. 502, 503 (1992). In *Shields, supra*, the Court also held that the application for burial benefits would not be construed as an informal claim for DIC because the claimant had not checked the box on the application which indicated that the veteran's death was related to service. However, in this case, the appellant did check the box on her application for burial benefits to indicate that the veteran's death was related to service. Therefore, her application for burial benefits was an informal claim for DIC benefits. The VARO, in fact, treated the application for burial benefits as an informal claim and sent the appellant an application form for DIC benefits. *See* 38 C.F.R. § 3.155(a); *see also Servello*, 3 Vet.App. at 200 (1992) (holding that because the VARO had not forwarded a formal application pursuant to section 3.155(a), the one-year period for filing a formal application was not triggered). However, the appellant did not return that application form for DIC to VA within one year, and, therefore, she did not file in 1986 a claim in the manner prescribed by the Secretary. *See Jones, supra.* For that reason, the Board's decision that the appellant had not filed a claim for DIC benefits prior to October 1993 was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *See Westberry, supra.*

The appellant next contends that pursuant to the recent decision by the U.S. Court of Appeals for the Federal Circuit in *Bailey, supra*, the doctrine of equitable tolling should be applied in this matter and the one-year time period for filing her formal application for DIC benefits should have been tolled. The appellant asserts that she did not return the application for DIC because she had spoken with a VA benefits counselor who had told her (1) that multiple myeloma was not a condition that could be service connected under the regulations relating to Agent Orange exposure, and (2) that she did not qualify for a non-service-connected pension because her income level was too high.

■ This Court may apply the doctrine of equitable tolling to extend the 120-day period for filing a Notice of Appeal with this Court. *See id.* at 1363–68. Equitable tolling is appropriate where " 'the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.' " *Id.*, at 1364 (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). Even assuming that the doctrine of equitable tolling applies to the one-year period for filing a formal claim under 38 C.F.R. § 3.155(a), *cf. Pfau v. West*, 12 Vet.App. 515, 517 (1999), under the facts in this case, there was no government misconduct. First, the VARO sent the appellant a formal application form for DIC with instructions that she *must* file the application within one year to preserve an earlier effective date for an award of DIC. Therefore, the documented, contemporaneous evidence of record shows that the Secretary provided the appellant with the correct advice in 1986 regarding the requirement to file a formal application. Second, if the alleged advice given by the VA employee was that multiple myeloma was not then listed by the Secretary as a disease entitled to presumptive service connection, that advice was correct. In 1986, 38 C.F.R. § 3.311a(c), stated that only chloracne was entitled to the presumption of service connection if the veteran had been exposed to Agent Orange. In fact, section 3.311a(d) specifically stated that sound scientific evidence had not established a relationship between "[a]ny other disease" besides chloracne and Agent Orange exposure. Section 3.311a(g) did state that service connection for any disease could be established if it was shown by sound scientific or medical evidence to have been incurred or aggravated

during service. Therefore, based on the regulation, a claim for direct service connection was possible. Nevertheless, it is not clear from the appellant's hearsay testimony what exactly the VA counselor told the appellant. Based on the facts in this case, the Court cannot find even that the appellant was misled in any manner or that the advice given would have or should have deterred her from filing a claim. To the contrary, if the appellant had followed the written instructions sent to her by the VARO, she would have preserved her right to retroactive payments under *Nehmer II.*

Assuming arguendo that the VA employee, who supposedly advised the appellant as to the "Agent Orange" situation in 1986, failed to be prescient as to the jurisprudence of direct service connection that evolved ten years later in *Combee v. Brown,* 34 F.3d 1039 (Fed.Cir.1994), nonetheless, this "misadvice" (more accurately nonadvice) cannot, nunc pro tunc, be the basis of an equitable waiver. The advice given was correct. If she failed to file a claim because the law that existed when the advice was given was not favorable to her claim, that is not an uncommon situation and is hardly the basis for equitable relief.

The Court holds that under the facts of this case, the doctrine of equitable tolling is not applicable, and the appellant did not file a claim for DIC benefits prior to October 1993. Furthermore, the Court agrees with the Secretary that because the appellant did not file a claim prior to October 1993, a remand by this Court for the Board to apply the *Nehmer II* decision would not benefit the appellant. Therefore, the Board's application of G.C. Prec. 15-95 was harmless error. *See Winters v. West,* 12 Vet.App. 203 (1999) (holding that it was harmless error for the Board to apply the test in *Colvin v. Derwinski,* 1 Vet.App. 171 (1991), which was overruled by the Federal Circuit, when it was clear that the claim was not well grounded there was no possibility of the appellant prevail-

ing on the claim); *cf. Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991) (holding that where the law changes during the pendency of a claim for VA benefits, the version most favorable to the claimant applies unless Congress has provided otherwise).

### III. CONCLUSION

After consideration of the record and the pleadings of the parties, the Court holds that the January 1998 decision of the Board is AFFIRMED.