**Heriberto CINTRON, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 98–1315.

United States Court of Appeals for Veterans Claims.

Argued Oct. 27, 1999.

Decided Dec. 1, 1999.

Kenneth F. Rossman, IV, with whom Edward M. Green was on the pleadings, for the appellant.

Cristine D. Senseman, with whom Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and Thomas A. McLaughlin were on the pleadings, for the appellee.

Before NEBEKER, Chief Judge, and STEINBERG and GREENE, Judges.

STEINBERG, Judge:

Before the Court in this appeal is a jurisdictional question concerning the timeliness of the appellant's Notice of Appeal (NOA). The answer to this question depends on whether the circumstances in this case warrant equitable tolling, under *Bailey v. West,* 160 F.3d 1360 (Fed.Cir. 1998) (en banc), of the 120–day judicial-appeal period prescribed by 38 U.S.C. § 7266(a). Because the Court will hold that the circumstances here do not support the application of equitable tolling, we will grant the Secretary's motion to dismiss this appeal for lack of jurisdiction, and will dismiss the appeal.

## I. Relevant Background

On July 21, 1998, the appellant filed pro se an NOA from a June 16, 1998, decision of the Acting Chairman of the Board of Veterans' Appeals (BVA or Board) denying reconsideration of a September 24, 1997, BVA decision. On September 22, 1998, the Secretary filed a motion to dismiss the appeal for lack of jurisdiction; he contends that, although the Court received the appellant's NOA within 120 days after the date of the BVA Acting Chairman's

denial of his motion for reconsideration, the Board had not received the appellant's motion for reconsideration until May 26, 1998, more than 120 days after the date stamped on the BVA decision. Motion at 5. The Secretary states that the VA Office of General Counsel is unable to obtain a copy of the Board's date-stamped receipt of that motion for reconsideration. Motion at 2 n. 1. On September 30, 1998, the Court ordered the appellant to explain why the Court should not dismiss this appeal. The appellant responded pro se on October 16, 1998, arguing that on December 3, 1997, he had submitted a motion for BVA reconsideration, a copy of which he attached. Oct. 16, 1998, Response (Resp.) at 1.

On October 28, 1998, the Court ordered the Secretary to file a response to the appellant's response; the Secretary replied on November 17, 1998, and renewed his motion to dismiss. The Secretary notes that he received from the appellant on September 25, 1997, a document dated September 22, 1997 (a date two days before the BVA decision here on appeal), which had been sent directly to the Board, and that that document, of course, did not contain a request for reconsideration. Nov. 17, 1998, Resp. at 1–2. The Secretary concedes that there is in the appellant's claims file a document dated October 3, 1997, requesting BVA reconsideration; he notes, however, that, although that document is date-stamped as received on October 6, 1997, by a Department of Veterans Affairs (VA) regional office (RO), there is no date stamp on that document that would indicate when or if the Board actually received it. *Id.* at 2. In addition, the Secretary avers that neither the Board nor the VARO received the December 3, 1997, motion for reconsideration until October 16, 1998, when *a copy* of it was received by the Board as an attachment to another motion. *Ibid.* Moreover, he avers that on May 26, 1998, the Board received a document dated May 18, 1998, that the Board construed as a motion for reconsideration and that that motion was denied on June

16, 1998. *Ibid.* The Secretary attached an affidavit from Nancy D. Stackhouse, BVA Director of the Administrative Service, attesting to a May 26, 1998, date stamp for BVA receipt of that May 18, 1998, motion, and also attached a copy of such a date stamp. The appellant does not contest the authenticity of that date stamp.

On January 15, 1999, the appellant responded through counsel (who had entered an appearance on November 23, 1998, to provide pro bono representation) to the Secretary's November 17, 1998, renewed motion to dismiss. The appellant argues that, under the circumstances of this case and notwithstanding *Jaquay v. West,* 11 Vet.App. 67 (1998), the Court should apply the principles of equitable tolling set forth in *Bailey, supra.* Jan. 15, 1999, Resp. at 2. He submits an affidavit and contends that his representative (an employee of the Commonwealth of Virginia Department of Veterans' Affairs) had filed with the RO two motions for BVA reconsideration on his behalf on the "understanding" (based on the representative's "long-standing relationship" with that RO) that the RO would timely transfer to the Board any motion for BVA reconsideration. *Id.* at 2–5, 9–10. The appellant argues, in essence, that the RO had historically forwarded such motions to the Board and that this asserted practice had led his representative to rely on a timely forwarding by the RO to the Board. He further argues that, because the Secretary generally is in control of the documents that an appellant needs in order to establish that a motion for reconsideration (here his October 3, and December 3, 1997, motions for reconsideration) was indeed received by the Board within the statutory 120–day judicial-appeal period, the appellant has no way to dispute the Secretary's position that the Board received those motions only after the 120–day period has passed. *Id.* at 6. The appellant concedes that in *Jaquay* the Court held that 38 C.F.R. § 20.1001(b) (1998) requires that motions for BVA reconsideration must be filed with

the Board and not with the RO. *See Jaquay,* 11 Vet.App. at 70. *Id.* at 7.

On January 26, 1999, the Court ordered the Secretary to file a copy of the BVA Notice of Appellate Rights (Notice) that accompanied the September 24, 1997, BVA decision on appeal. The Secretary responded on February 2, 1999, that that form was not *then* available through the computer system used by the Board to track BVA decisions but that in the normal course of business that form would have been attached to the BVA decision. On April 15, 1999, the Court ordered the Secretary to reply to the appellant's January 15, 1999, response and to file a copy from the appellant's claims file of any Notice that accompanied the mailing of the September 24, 1997, BVA decision. The Secretary then provided, with his reply, a copy of the Notice that accompanied the mailing of the BVA decision. In his reply, the Secretary argues that *Bailey, supra,* is distinguishable from the instant case and that *Jaquay, supra,* controls. He asserts first that in *Bailey* the pro se appellant had relied on a VA employee to file his pleading; whereas, in the instant case, the appellant retained an "experienced" representative to file his pleading. July 1, 1999, Resp. at 4. In addition, the Secretary contends that, unlike in *Bailey,* because no representation was made by VA (the representative has provided no specifics as to what VA employee(s) misled him and in regard to which cases), the appellant in this case was not misled by any *VA* representation into allowing the filing deadline to pass. *Ibid.* He argues further that, unlike in *Bailey,* VA has not undertaken, as *Jaquay* recognized that it had not, 11 Vet.App. at 72–73, a duty either directly or through law or regulation to forward to the Board motions for BVA reconsideration that have been received at the RO. He asserts that this is a case of excusable neglect that does not reach the threshold of equitable tolling. *Ibid.*

On October 26, 1999, the Secretary filed a notice of supplemental authority as to cases in which this Court had discussed *Bailey*—*Jones (Carlos) v. West,* 13 Vet. App. 129 (1999) (per curiam order); *Mitscher v. West,* 13 Vet.App. 123 (1999); *Brown (Marvin) v. West,* 13 Vet.App. 88 (1999); and *Leonard v. West,* 12 Vet.App. 554 (1999) (per curiam order)—and to *Curtis v. West,* 13 Vet.App. 114 (1999) (per curiam order). *See* U.S. VET.APP. R. 28(g) ("[w]hen pertinent and significant authorities come to the attention of a party after the party's brief has been filed . . . party shall promptly advise the Clerk, by letter, with a copy to all other parties, setting forth citations"); *Penny v. Brown,* 7 Vet. App. 348, 351 (1995).

## II. Analysis

■ The ultimate burden of establishing jurisdiction rests with the appellant. *See McNutt v. G.M.A.C.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Bethea v. Derwinski,* 2 Vet.App. 252, 255 (1992). Pursuant to 38 U.S.C. § 7266(a), in order for a claimant to obtain review of a BVA decision by this Court, that decision must be final and the person adversely affected by it generally must file a timely NOA with the Court. *See Bailey,* 160 F.3d at 1363. To have been timely filed under 38 U.S.C. § 7266(a) and Rule 4 of this Court's Rules of Practice and Procedure, an NOA generally must have been received by the Court (or, in certain circumstances, deemed so received) within 120 days after notice of the underlying final BVA decision was mailed. *See Leonard,* 12 Vet.App. at 555; *see also* 38 U.S.C. § 7266(a)(3)(B). *But see Evans (Billy) v. West,* 12 Vet.App. 396, 399 (1999) (citing *Bailey, supra,* and other cases regarding equitable tolling of NOA-filing period under certain circumstances).

■ This Court may not review denials of reconsideration by or on behalf of the BVA Chairman in cases where it does not already have jurisdiction by virtue of a timely appeal from a final Board decision. *See Mayer v. Brown,* 37 F.3d 618, 619 (Fed.Cir.1994), *overruled in part by Bailey,* 160 F.3d at 1368. There is an excep-

tion in those cases in which the appellant has (1) filed with the Board a motion for BVA reconsideration within 120 days after the mailing date of notice of the underlying final BVA decision *and also* (2) filed with the Court an NOA within 120 days after the BVA Chairman has mailed notice of a denial of the reconsideration motion. *See Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991); *see also Linville v. West*, 165 F.3d 1382, 1385–86 (Fed.Cir.1999) (by implication ratifying *Rosler* holding, applying liberalizing VA postmark regulation (38 C.F.R. § 20.305(a) (1998)) to determine date on which BVA received motion for BVA reconsideration, and holding that NOA had been timely filed under *Rosler*, *supra* ).

Specifically, section 7266(a) provides:

(a)(1) In order to obtain review by the [Court] of a final decision of the [Board], a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.

(2) An appellant shall file a notice of appeal under this section by delivering or mailing the notice to the Court.

(3) A notice of appeal shall be deemed to be received by the Court as follows:

(A) On the dates of receipt by the Court, if the notice is delivered.

(B) On the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.

(4) For a notice of appeal mailed to the Court to be deemed to be received under paragraph (3)(B) on a particular date, the United States Postal Service postmark on the cover in which the notice is posted must be legible. The Court shall determine the legibility of any such postmark and the Court's determination as to legibility shall be final and not subject to review by any other Court.

38 U.S.C. § 7266(a). In this case, although the Court received the appellant's NOA within 120 days after the date of the BVA Acting Chairman's denial of his motion for reconsideration, the evidence indicates that the Board received the appellant's motion for reconsideration on May 26, 1998, more than 120 days after the date of mailing of notice of the BVA decision. Thus, without evidence that the Board received a prior motion for reconsideration before the expiration of the 120–day judicial-appeal period or unless there are circumstances warranting equitable tolling of that period, the Court must dismiss this appeal for lack of jurisdiction, *see Rosler*, *supra.*

█ The Board decision was issued on September 24, 1997, and in order to toll the 120–day judicial-appeal period the appellant's motion for BVA reconsideration had to have been filed on or before January 22, 1998. The appellant alleges that he filed two motions for BVA reconsideration, one dated October 3 and one dated December 3, 1997. Jan. 15, 1999, Resp. at 3–4. If the appellant could establish that the Board did receive either of those two motions on or before January 22, 1998, his NOA would be timely. *See Rosler, supra.* The Secretary avows that he has no evidence that *the Board* received either of those motions prior to the expiration of the 120–day period, although what appears to be the original of the October 3, 1997, document is currently in the appellant's claims file as an attachment to a VA cover memorandum. Nov. 17, 1998, Resp. at 2, Affidavit at 2. Initially, the Secretary stated that he could not show on what date the Board received the appellant's May 18, 1998, motion that the BVA Acting Chairman actually denied; but later, the Secretary did provide the Court with evidence of the Board's having received on May 26, 1998, the appellant's motion for BVA reconsideration, dated May 18, 1998. The appellant is correct in his assessment that the Secretary is generally in control of document-receipt records that a VA claim-

ant may need in order to meet his or her burden of showing compliance with *Rosler, supra.* However, because the appellant concedes that he did not file the October and December 1997 motions **with the Board** and because there is no evidence in VA or Board records that either document was ever received by the BVA until October 16, 1998, which is well after the expiration of the 120–day judicial-appeal period, we hold that the appellant has failed to carry his burden of showing that his motion for reconsideration was received by the BVA within the 120–day statutory judicial-appeal period and, therefore, of showing that the NOA filing deadline was tolled pursuant to *Rosler.*

■ Thus, the question before us is whether the above circumstances surrounding the appellant's filing of the October and December 1997 motions for reconsideration trigger the application of equitable tolling to the 120–day judicial-appeal period. That doctrine derives from *Irwin v. Dep't of Veterans Affairs,* where a VA employee's attorney had filed an untimely complaint in a U.S. District Court asserting employment discrimination. *Irwin,* 498 U.S. 89, 91, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). *Irwin* was described in the following terms by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Bailey:*

> [The ]*Irwin* [case] and other cases explain that equitable tolling is available in suits between private litigants where, "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin* [, 498 U.S.] at 96, [111 S.Ct. 453] ... (footnotes omitted); *see also Juice Farms, Inc. v. United States,* 68 F.3d 1344, 1346 (Fed.Cir.1995) ("*Irwin* would allow equitable tolling only if the Government tricked Juice Farms into missing the deadline. *Irwin* also weighs Juice Farms' diligence in determining

whether to toll a limitations period.") (internal citations to *Irwin* omitted). However, courts are less likely to toll the limitations period when the filing is late and [a] "claimant failed to exercise due diligence in preserving his legal rights." *Irwin, supra.*

*Bailey,* 160 F.3d, at 1364.

As the above quotation shows, *Irwin* provides two alternative bases for equitable tolling: (1) Active pursuit of a judicial remedy by the claimant's filing a defective pleading during the statutory period or (2) an adversary's conduct that induces or tricks another party into missing the deadline. The first alternative applies where the pleading is defective even though filed within the statutory period. The second alternative applies where a filing is submitted late as a result of the claimant's having been induced or tricked by VA into late filing. In this case, only the second option might be applicable. In the *Irwin* case itself, however, the Supreme Court, noting that "courts have typically extended equitable relief only sparingly", did not apply the equitable-tolling doctrine to the late filing in a situation where the appellant's attorney was absent from his office at the time that notice of the adverse decision was received. Instead, the Supreme Court held that "the principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Irwin, supra; see also Jones (Carlos),* 13 Vet.App. at 131, order at 2 (holding that failure to send NOA to this Court's correct address was excusable neglect that did not warrant equitable tolling); *Leonard,* 12 Vet.App. at 555 (holding that "case amount[ed] to 'at best a garden variety claim of excusable neglect' to which the principles of equitable tolling do not extend" where delay of more than three months occurred before service-organization representative responded to appellant's request for assistance and she tried to mail her NOA on last day of statutory period but U.S. Post Office had unexpectedly closed early that day).

In the veterans' benefits context, the Federal Circuit in *Bailey* overruled by implication this Court's opinions in *Dudley v. Derwinski*, 2 Vet.App. 602 (1992) (en banc order), and *Jones (Ponce) v. Derwinski*, 2 Vet.App. 362 (1992), explicitly overruled several of its own opinions, and held:

> According to allegations in the papers before us, Bailey learned before the time had run that he could file a claim with the aid of a Veterans Benefits Counselor, rather than an attorney. His reliance on, and faith in what Congress clearly intended to be a paternalistic means for addressing veterans' claims, *see, e.g.*[,] *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 323–24, 105 S.Ct. 3180, 87 L.Ed.2d 220 ... (1985) (superseded by Veterans['] Judicial Review Act), presumably lulled him into accepting and relying upon the advice and aid of the government. Given the particular relationship between veterans and the government, Bailey was misled by the conduct of his adversary into allowing the filing deadline to pass. Although there is no suggestion of *mis*conduct, such as tricking Bailey into missing the 120[-]day filing deadline, we nevertheless conclude that a veteran's inducement by an adversary's **conduct** is akin to grounds sufficient to toll a limitations period in a private suit.

*Bailey*, 160 F.3d at 1365, 1368 (emphasis added). The Federal Circuit in *Bailey* held that equitable tolling in the paternalistic veterans' benefits context does not require *mis*conduct (such as trickery). *See* Response at 6; *Bailey*, 160 F.3d at 1365; *see also Leonard*, 12 Vet.App. at 557 (Steinberg, J., concurring). However, *Bailey* does require that the appellant was misled or induced **by VA conduct** to allow the filing deadline to pass. *See Bailey, supra; see also Mitscher*, 13 Vet.App. 123, 128. There must be cause and effect; that is, the appellant must have relied to her detriment on something that VA did (or should have but did not do). *See Bailey*, 160 F.3d at 1364 (quoting *Irwin, supra*, as to party being "induced or tricked by his

adversary's misconduct into allowing the filing deadline to pass" and noting that veteran had accepted and relied on VA advice and was misled by that advice into allowing filing deadline to pass). Therefore, "excusable neglect" in the veterans' benefits context still means that it was the appellant's (including the appellant's attorney's) fault or, put another way, that the appellant's reliance on VA was not the cause of the late filing.

Here, the appellant argues that the Supreme Court in *Irwin* would have allowed equitable tolling where a claimant filed a timely claim in the wrong court. Jan. 15, 1999, Resp. at 11; *see Irwin*, 498 U.S. at 96 n. 3, 111 S.Ct. 453 (Court had allowed equitable tolling where "plaintiff timely filed complaint in wrong court", citing *Burnett v. New York Central R. Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)). However, in *Jaquay*, as in the instant case, the appellant had mailed a motion for BVA reconsideration to an RO instead of to the BVA, in contravention of 38 C.F.R. § 20.1001(b). *Jaquay*, 11 Vet. App. at 70. Although the RO there eventually had forwarded that motion to the BVA, as it did here, the Board did not receive it until after the statutory 120–day judicial-appeal period had expired, and the Court held that that appeal period had not been tolled under *Rosler, supra. Jaquay*, 11 Vet.App. at 70–71. In *Baisden v. West*, this Court described *Jaquay* as follows:

> The Court [further] held [in *Jaquay*] that, even if the RO had had a duty to forward the appellant's motion for BVA reconsideration to the Board, 'a failure to perform such a duty could not, in this case, yield the equitable remedy of a judicial holding that the motion had been filed with the Board within the 120–day NOA-filing period' because actual receipt was required and because the appellant, 'who was correctly informed of filing requirements ..., cannot be said to have exercised the due diligence required to invoke equitable

tolling even if such a remedy were available in this Court'.

*Baisden,* 11 Vet.App. 215, 217 (1998) (quoting *Jaquay,* 11 Vet.App. at 73–74, and citing *Irwin, supra* ). However, the Court in *Jaquay* anticipated the possible application of equitable-tolling principles in a case where the misfiling had been induced by VA conduct. *See Jaquay,* 11 Vet.App. at 73. Hence, the Court's holdings in that case are not inconsistent with the Federal Circuit's dictates in *Bailey. Compare Bailey,* 160 F.3d at 1365 (holding that Court would not apply equitable tolling where action was "at best a garden variety claim of excusable neglect", quoting *Irwin, supra* ), *with Jaquay,* 11 Vet.App. at 73 (noting that, should it be available, equitable-tolling doctrine would not apply where appellant, "who was correctly informed of filing requirements", misfiled motion through lack of due diligence).

The Secretary has provided evidence, in the form of a Notice dated September 24, 1997, that accompanied the BVA decision on appeal, that VA properly and promptly advised the veteran of his appellate rights, as required by 38 U.S.C. § 5104(a) (when VA makes a decision as to a claim for benefits, the Secretary "shall, on a timely basis, provide the claimant . . . notice of such decision . . . [that] shall include an explanation of the procedure for obtaining review of the decision"); the appellant has not refuted that evidence. The Court thus holds that the appellant was fully advised of his appellate rights in accordance with section 5104. *See Cummings v. West,* 136 F.3d 1468, 1474 (Fed.Cir.1998), *overruled on other grounds, Bailey,* 160 F.3d at 1368. That Notice specifically provides that a motion for reconsideration is to be filed *with the Board.* In addition, 38 C.F.R. § 20.1001(b) requires that a motion for BVA reconsideration be filed at the Board and provides the Board's address. *See Zajicek v. West,* 12 Vet.App. 48, 50 (1998); *Baisden,* 11 Vet.App. at 216; *Jaquay,* 11 Vet.App. at 74. There is nothing misleading or ambiguous in either § 20.1001(b) or the BVA Notice's address reference that could reasonably be said to have induced the appellant to miss the NOA filing deadline. *See Butler v. Derwinski,* 960 F.2d 139, 140–41 (Fed.Cir. 1992) ("[a]lthough often effecting a seemingly harsh result, courts cannot disregard jurisdictional requirements[,] established by Congress[,] out of sympathy for particular litigants"), *overruled in part on other grounds by Bailey,* 160 F.3d at 1368; *see also Baldwin Co. Welcome Ctr.,* 466 U.S. at 152, 104 S.Ct. 1723 ("[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants"). Moreover, the Federal Circuit has held that the equitable-tolling doctrine cannot apply where an attorney has misread a statute. *See Gilbert v. Secretary of HHS,* 51 F.3d 254, 257 (Fed.Cir.1995). Thus, even before *Jaquay,* which had not been issued when the January 22, 1998, statutory deadline expired here, VA had made it clear that a motion for BVA reconsideration was to be filed with the Board and not the RO.

The appellant concedes that he filed his October and December 1997 motions for BVA reconsideration with the RO and not the Board. Jan. 15, 1999, Resp. at 2. However, he argues, supported by an affidavit to that effect, that based on a "long-standing relationship" (nine years) with the RO, his representative had filed those motions with the RO, depending upon the RO to make timely referral of the motions to the Board. Essentially, the appellant contends that his representative had relied on VA past conduct in transferring motions to the Board in a timely manner. *Id.* at 2–5, 9–10.

As noted above, this Court has held that VA as a general matter has no duty to forward a misdirected motion to the Board in a timely manner or to return such a motion in a timely manner to the appellant. *See Zajicek, supra; Jaquay,* 11 Vet. App. at 72–73. Although the appellant has provided an affidavit from his repre-

sentative averring that he had relied on a VA practice of forwarding motions for BVA reconsideration to the Board when they had been filed with the RO, that evidence is not sufficient to establish that VA engaged in any conduct that misled the appellant's representative; rather, the affidavit shows that the representative "understood" that he could file a motion with the RO and that the RO would then timely forward it to the Board and that he also was not told to cease that practice by anyone at the RO. Jan. 15, 1999, Resp., Affidavit at 2. Indeed, the appellant concedes that "nobody at [VA] ever told [the appellant's representative] to [such] send motions to the [RO]". Jan. 15, 1999, Resp. at 11. Moreover, as the Secretary pointed out in his July 1, 1999, response:

> [The a]ppellant's former representative, Mr. Anderson, did not allege that any VA employee assured him that the documents he filed would be forwarded to the Board on his client's behalf, or that any VA employee helped him to prepare the documents. He did not provide the case names or claims file numbers of any other requests for reconsideration he has allegedly submitted in this fashion, or recount whether in any other case the reconsideration request was received by BVA within the judicial-appeal period and was then acted upon by the Board. He did not provide the name of any VA employee with whom he has a formal or informal arrangement concerning the filing of requests for reconsideration. He did not provide the name, grade or job responsibility of the employee to whom he gave the requests in the instant case. He did not allege that any VA employee instructed or advised him to ignore the Board's [Notice] concerning the filing of reconsideration requests and/or appeals of BVA decision.

July 1, 1999, Resp. at 4–5. *See also Brown (Marvin)*, 13 Vet.App. at 91 (holding that equitable tolling did not apply where appellant had failed to provide any supporting evidence as to his allegation that VA induced him to miss NOA-filing deadline).

Even if this Court could "recognize[ ] that later filing due to circumstances beyond an appellant's control could provide a basis for the application of equitable tolling", *Leonard*, 12 Vet.App. at 558 (Steinberg, J., concurring), such a basis would not apply here because the appellant certainly could have followed the written instructions in the Notice and mailed his motion for BVA reconsideration directly to the Board. Moreover, even if all of the appellant's contentions were true, he would still not be entitled to equitable tolling here based on any VA practice of accepting motions for BVA reconsideration to be forwarded by the RO to the Board. Under law and regulation, there is no time limit for the filing with the Board of a motion for BVA reconsideration. *See* 38 U.S.C. § 7103(a); 38 C.F.R. § 20.1001 (1998); *Linville*, 165 F.3d at 1386 ("motion for reconsideration may be filed 'at any time' "); *Rosler*, 1 Vet.App. at 244. Thus, it would be perfectly reasonable for an RO to accept such a motion to be forwarded to the Board *in due course* without any notice to the RO that the forwarding was a matter of time urgency. In this case, there is no assertion that either the veteran or his representative, Mr. Anderson, ever suggested a time-sensitive nature as to the filing with the Board, either directly or by reference to any future intention to file an NOA with this Court. It appears that at least photocopies of the October motion for BVA reconsideration were received by the Board ultimately on October 16, 1998. *See* Secretary's Nov. 17, 1998, Resp., Stackhouse Affidavit at 2–3. Certainly, the RO had no obligation to read the minds of the veteran and/or his representative as to any future appeal to this Court.

## III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the submissions of the parties, the Court

grants the Secretary's motion and dismisses this appeal for lack of jurisdiction.

APPEAL DISMISSED.

NEBEKER, Chief Judge, concurring:

I concur in the result.