UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-799

Henry R. Tavares, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided     June 24, 2004  )

*Mary Anne Royle*, of Vancouver, Washington, was on the pleading for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Thomas A. McLaughlin*, Special Assistant to the Assistant General Counsel; *Cristine D. Senseman*, Appellate Attorney; and *Gabrielle L. Clemons* (non-attorney practitioner), all of Washington, D.C., were on the pleadings for the appellee.

Before KRAMER, *Chief Judge*, and KASOLD and HAGEL, *Judges.*

KRAMER, *Chief Judge*, filed the opinion of the Court.  KASOLD, *Judge,* filed a dissenting opinion.

KRAMER, *Chief Judge*:  Before the Court is the issue of whether the appellant filed a timely Notice of Appeal (NOA) from a January 18, 2002, Board of Veterans' Appeals (Board or BVA) decision.  For the reasons that follow, the Court will dismiss for lack of jurisdiction this appeal.

## I. Procedural History and the Parties' Pleadings

On June 5, 2002, the appellant filed pro se an NOA as to the January 18, 2002, BVA decision in which the Board, inter alia, denied entitlement to service connection for residuals of exposure to hallucinogenic substances, including paranoia, depression, back problems, total intolerance to stress with depression and mania, hyperexcitability, catatonia, violent tendencies, brain wave changes, and lack of equilibrium.  The Court notes that it received the NOA 138 days after the date that the Board

mailed notice of its decision. The Clerk of the Court (Clerk), on June 12, 2002, ordered the appellant to explain why his appeal should not be dismissed for lack of jurisdiction. The appellant filed a response in which he asserts that he believed that Mr. Alfonzo Padilla of the San Diego, California, VA Regional Office (RO) had "attended to" the appellant's appeal "shortly after [notice of] the BVA decision" was received and that, at that same time, the appellant had "mailed an appeal letter into [the Court] . . . as [he has] a tendency to be redundant." Appellant's June 2002 Response (Resp.) at 1. In this response, the appellant further asserts that (1) since January 2002, he had been in contact with Mr. Padilla on numerous occasions regarding this appeal; (2) after he received a copy of the BVA decision, he visited the San Diego RO and showed the decision to Mr. Padilla, who "vowed to work on [the appellant's] appeal from a different angle"; and (3) Mr. Padilla expressed that he would "get [the appellant's appeal] to [the Court] in a timely fashion." *Id*. at 1-2. Further, the appellant asserts that in April 2002 he telephoned Mr. Padilla in order to check on the status of the appeal; in May 2002, he again telephoned Mr. Padilla in order to check on the status of his appeal; and during the May 2002 telephone conversation, Mr. Padilla informed him that "it would take between [eight] to [nine] months before [the appellant] heard back [from the Court]." *Id.*

Additionally, the appellant asserts that, on June 5, 2002, he met with Mr. Padilla, who explained to the appellant that he would need to sign some papers with regard to the processing of his appeal, and that Mr. Padilla related that he never had processed an appeal to the Court in the past. *Id*. at 3. On that same date, the appellant asserts, Mr. Padilla requested that the appellant complete a Declaration of Financial Hardship form and an NOA and Mr. Padilla stated that he would send with the NOA a letter on the appellant's behalf. *Id*. Finally, the appellant relates that he received his docket number on June 8, 2002; that Mr. Padilla "had assured [the appellant] that [his] case had been docketed all along[;] and [that Mr. Padilla had assured him] that [he] had nothing left to do but wait." *Id*. at 2. The Clerk, noting that the appellant's NOA had been received via facsimile from the San Diego RO, ordered a Secretarial response and stayed proceedings.

In July 2002, the appellant filed an addendum to his June 2002 response. In this addendum, the appellant states that "it is [his] position that the deadline for filing [his NOA] was tolled when [he] was repeatedly informed (including in writing . . . ) by a highly[]placed VA employee that [VA] was filing a[n NOA] with the [Court] on [his] behalf." July 8, 2002, Addendum at 1. He argues that

2

he relied on VA to assist him in the filing of his appeal and that the Secretary should not benefit from his unclean hands. *Id*. Attached to this addendum is a copy of an electronic communication (e-mail) exchange, dated June 5 and 6, 2002, between the appellant and Mr. Padilla. The appellant's June 5, 2002, e-mail to Mr. Padilla reflects that the appellant was confirming with Mr. Padilla that "[t]hose two letters" were mailed via certified mail, return receipt requested, and the e-mail contains two U.S. Postal Service (USPS) envelope tracking numbers. July 8, 2002, Addendum, Exhibit (Ex.) 1. The Court presumes that in that e-mail the appellant was referring to the above-mentioned June 2002 NOA and Declaration of Financial Hardship form. (The Court notes that one of the USPS tracking numbers reflected in the appellant's June 2002 e-mail corresponds to a USPS tracking number imprinted on an envelope containing a duplicate copy of the appellant's June 5, 2002, NOA; that copy was received by the Court after it received the June 5, 2002, NOA that had been transmitted via facsimile.) In his June 6, 2002, e-mail response, Mr. Padilla stated:

> The letter just has to be post[]marked before the 16th and that has already been done (your receipt is the post[]mark). Also, I have a report from the [facsimile] machine that shows that it was received by the [C]lerk at [the Court.] Whenever you're in town[,] I'll give you a copy[.]

*Id*.

On September 11, 2002, the Court received from the appellant further correspondence in which he, inter alia, reiterates his previous arguments; he attached to that correspondence (1) a copy of the June 5 and 6, 2002, e-mail exchange with Mr. Padilla, and (2) copies of telephone bills, dated from February to June 2002, reflecting numerous telephone calls to Mr. Padilla's office telephone. September 11, 2002, Supplemental Correspondence (Corr.) at 1-3, Ex. 2, 4. Included in the correspondence is a statement of Mrs. Brenda Tavares, wife of the appellant, in which statement she essentially attests to the veracity of the appellant's asserted version of events. *Id*. The United States Court of Appeals for the Federal Circuit (Federal Circuit), on September 16, 2002, issued its decision in *Jaquay v. Principi*, 304 F.3d 1276 (Fed. Cir. 2002) (en banc).

On September 17, 2002, the Secretary filed his response with the Court. He argues that the appellant's NOA is untimely; that there is no evidence that the appellant filed an NOA prior to the expiration of the judicial-appeal period; and that equitable tolling is not warranted because Mr. Padilla's actions and statements did not induce the appellant into allowing the filing deadline to pass.

3

Secretary's Resp. at 2-4. In support of his arguments, the Secretary attached to his response a Declaration from Mr. Padilla. In his Declaration, Mr. Padilla stated that he is a Management Analyst and Community Affairs Officer at the San Diego RO. Declaration at 1. Mr. Padilla's Declaration reflects that, in late January 2002, he had met with the appellant regarding the January 2002 BVA decision and had explained to the appellant his appellate rights and the Court's procedures. *Id.* Mr. Padilla's Declaration further reflects that, although the appellant had asked Mr. Padilla to file his appeal "when [the appellant] completed the paperwork," Mr. Padilla had declined and had explained that only the appellant could complete the Court's procedures. *Id*. at 1-2. In his Declaration, Mr. Padilla acknowledged that, during their January 2002 meeting, he had informed the appellant that he would ensure that the appellant's "[claims] file was ready for a request from the [Court]." *Id*. at 2.

According to Mr. Padilla's assertions in his Declaration, the appellant, a few weeks after their January 2002 meeting, inquired about "[the Court's] time frames" and Mr. Padilla did not provide that information to the appellant and did not "check . . . to see if [the appellant's claims] file had been requested by [the Court]." *Id.* Mr. Padilla further asserted that, on June 5, 2002, the appellant contacted him and he located the appellant's claims file, which was still present at the San Diego RO. Declaration at 2. Because he thought the claims file already would have been transferred to Washington, D.C., in connection with the appeal, Mr. Padilla had "expressed [his] concern to [the appellant] and [had] asked [the appellant] if he had kept a copy of his appeal paperwork." *Id*. During a later conversation that same day, the appellant had responded that the Court did not have his appeal and that he could not locate his paperwork. *Id*. With regard to the appellant's June 2002 visit to the San Diego RO, Mr. Padilla asserted in his Declaration that he had assisted the appellant in completing "another set of forms to send to the [Court]" and that he had faxed to the Court the appellant's NOA and his Declaration of Financial Hardship form. *Id*. Last, the Declaration reflects Mr. Padilla's assertion that "[a]t no time did [he] tell [the appellant] that [he] would handle [the appellant's] appeal for him" and that he had no reason to believe that the appellant did not submit his NOA to the Court in January 2002. *Id*. at 2-3.

In August and September 2002, the Court received from the appellant (and subsequently accepted for filing) two additional pieces of correspondence. In his September 17, 2002,

4

correspondence, the appellant argues that he never received from the Court a response regarding a request for information on filing an appeal that he allegedly had sent to the Court in January 2002 and attributes the Court's non-response to that request to the situations created as a result of September 11, 2001, and the subsequent anthrax-contamination scare involving the USPS. September 17, 2002, Corr. at 3. The appellant's September 20, 2002, submission appears to be a signed and certified affidavit from Mrs. Tavares in which she essentially reiterates the appellant's allegations. September 20, 2002, Corr. at 1-5. Subsequently, the Court stayed this matter in order for the appellant to attempt to retain counsel. Also, the Court notes that, on December 17, 2002, the Federal Circuit issued *Santana-Venegas v. Principi*, 314 F.3d 1293 (Fed. Cir. 2002).

In January 2003, counsel for the appellant entered her appearance and, on April 11, 2003, the appellant moved for permission to submit a supplemental response to the Court's June 12, 2002, order. On that same date, the Court received (and subsequently accepted for filing) the appellant's supplemental response (with attachments). In this supplement, the appellant disagrees with the assertions in Mr. Padilla's Declaration and argues that, because of his conversations with Mr. Padilla from July 2001 to June 2002 and because Mr. Padilla had intervened in a previous matter involving the appellant's veterans service officer (VSO), he believed that his appeal had been filed by Mr. Padilla. April 2003 Resp. at 1, 5-9. He further argues that Mr. Padilla's alleged statements to him that he had a docket number and Mr. Padilla's other statements about the Court's appellate process misled the appellant to believe that his NOA had been filed in the January 2002 to June 2002 time frame. *Id*. He also essentially argues that Mr. Padilla's e-mail reflecting that the appellant had until June 16, 2002, to file an NOA caused him to file an untimely NOA in June 2002. *Id*. Thus, he requests that the Court apply equitable tolling to permit his appeal to continue. *Id*. at 9. In support of his arguments, the appellant attached to his April 2003 response, inter alia, an affidavit, in which he chronicles his pre-2002 interactions with Mr. Padilla regarding the conduct of a VSO and his interactions with Mr. Padilla subsequent to receiving notice of the Board's January 2002 decision. April 2003 Resp., Ex. 1 at 1-2. In essence, the appellant also reiterates his assertions that, based on his prior experiences and contacts with Mr. Padilla, he believed that Mr. Padilla would assist him with his appeal. April 2003 Resp., Ex. 1 at 3. The Court notes that the appellant also attached copies of his telephone bills, dated from July 2001 to June 2002, which reflect several telephone

calls made to Mr. Padilla's office telephone number. On June 4, 2003, the Court, inter alia, ordered the Secretary to file a supplemental response addressing the appellant's April 11, 2003, pleading and the impact, if any, of *Santana-Venegas* and *Jaquay*, both *supra,* on the instant matter. The Court otherwise stayed proceedings.

In July 2003, the Secretary filed a supplemental reply in which he argued, inter alia, that the holdings in *Santana-Venegas* and *Jaquay*, both *supra*, which both address the availability of equitable tolling in the veterans benefits context, are inapposite to the instant matter. Secretary's July 2003 Reply at 4-6. Specifically, he argues that this matter is unlike *Jaquay* because it does not involve the filing of a motion for BVA reconsideration and because there is no record of a defective pleading having been filed within the statutory-appeal period. *Id*. at 4-5. He also argues that this case "is not affected by *Santana-Venegas*" because, again, there is no record of a defective pleading having been filed within the statutory-appeal period and because "it does not appear that [the appellant] was misled or induced into allowing the filing deadline to pass." *Id*. at 5. Additionally, the Secretary argues that this case is unlike *Bailey (Harold) v. West*, 160 F.3d 1360 (Fed. Cir. 1998) (en banc), because Mr. Padilla specifically informed the appellant that he could not file an NOA on the appellant's behalf and because there is no evidence that Mr. Padilla misled the appellant. Secretary's July 2003 Reply at 3. Thus the Secretary contends that this case must be dismissed for lack of jurisdiction because the appellant's NOA was not filed within the judicial-appeal period and because equitable tolling is not warranted. *Id*. at 6.

The Federal Circuit, on December 15, 2003, issued its opinion in *Bailey (Edward) v. Principi*, 351 F.3d 1381 (Fed. Cir. 2003). Thereafter, the Court ordered the Secretary to file with the Court any and all VA Form 119s (Report of Contact forms) in the appellant's claims file dated between January 18, 2002, and June 5, 2002. The Secretary, on January 15, 2004, advised the Court that the appellant's claims file contains no VA Form 119s dated between January 18, 2002, and June 5, 2002. Subsequently, the appellant provided the Court citations to supplemental authority to include *Bailey (Edward)*, *supra,* and *Barrett v. Principi*, 363 F.3d 1316 (Fed. Cir. 2004). In support of the arguments presented in his April 2003 pleading, the appellant contends, inter alia, that *Barrett* "reinforces the Federal Circuit's findings that equitable tolling [is] available 'in a variety of

6

circumstances'[] now to include cases where a veteran failed to meet a deadline due to mental illness."  Appellant's April 6, 2004, Corr. at 1-2 (internal citation not provided).

## II. Analysis

The ultimate burden of establishing jurisdiction rests with the appellant.  *See McNutt v. G.M.A.C.*, 298 U.S. 178, 189 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252, 255 (1992).  Pursuant to 38 U.S.C. § 7266(a), in order for a claimant to obtain review of a BVA decision by this Court, that decision must be final and the person adversely affected by that decision must file a timely NOA with the Court.  *See Bailey (Harold)*, 160 F.3d at 1363.  To have been timely filed under 38 U.S.C. § 7266(a) and Rule 4 of this Court's Rules of Practice and Procedure, an NOA generally must have been received by the Court (or, in certain circumstances, be deemed received) within 120 days after notice of the underlying final BVA decision was mailed.  *See Cintron v. West*, 13 Vet.App. 251, 254 (1999).  The Court is authorized to make findings of fact in determining whether an NOA was timely filed.  *See Stokes v. Derwinski*, 1 Vet.App. 201, 203-04 (1991).

In the instant appeal, the signed and date-stamped copy of the Board decision filed by the Secretary reflects that the appellant was fully advised of his appellate rights in accordance with 38 U.S.C. § 5104.  *See Cummings v. West*, 136 F.3d 1468, 1470-74 (Fed. Cir. 1998).  The Court received the appellant's NOA on June 5, 2002, 138 days after the date on which the Board mailed notice of its January 2002 decision.  The Court notes that May 20, 2002, was the last day of the judicial-appeal period.  Although the appellant essentially asserts that in January 2002 he had "mailed an appeal letter into [the Court]" (Appellant's June 2002 Resp. at 1) and, at some other point of time, had sent correspondence to the Court requesting information regarding the filing of an appeal (*see* Appellant's September 17, 2002, Corr. at 3), the Court notes that it did not receive any such documents and that there is no evidence (other than his assertions) to suggest that these documents were mailed.  *Cf.* Appellant's July 8, 2002, Addendum, Ex. 1 (appellant's June 5, 2002, e-mail to Mr. Padilla in which appellant provides USPS tracking numbers as to envelopes containing his June 2002 NOA and Declaration of Financial Hardship form, which envelopes were sent certified mail, return receipt requested).  To the extent that the appellant may be arguing implicitly that the

September 11, 2001, tragedy and/or the anthrax-contamination scare involving the USPS may have prevented the Court from receiving "an appeal letter" (Appellant's June 2002 Resp. at 1) or any other correspondence that he had allegedly mailed to the Court any time prior to the Court's receipt of the June 2002 NOA, that argument is unavailing because there is no evidence that any such documents were mailed to or received by the Court. *See Reed v. Principi*, 17 Vet.App. 380, 383 (2003) (per curiam order) (rejecting that appellant's argument that anthrax-contamination scare delayed Court's receipt of NOA because Court declined to speculate as to "how any anthrax-related mail-processing delay . . . may have affected when the appellant's NOA may have been delivered to the Court"). Thus, because the appellant's NOA was not received within the 120-day judicial-appeal period (on or before May 20, 2002), his appeal can proceed only if the Court applies equitable tolling to deem the June 2002 NOA timely filed. *See* 38 U.S.C. § 7266; *Santana-Venegas,* 314 F.3d at 1298; *Jaquay*, 304 F.3d at 1288; *Bailey (Harold)*, 160 F.3d at 1364-68.

Under certain circumstances, equitable tolling of the judicial-appeal period may be appropriate. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Bailey (Harold)*, *supra* (discussing equitable tolling in veterans benefits context); *Evans v. West*, 12 Vet.App. 396, 399 (1999). According to the *Irwin* court, equitable tolling has been allowed in the two situations discussed below. Courts, however, "have generally been much less forgiving in receiving late filings where the [appellant] failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96.

Under the first prong in *Irwin*, equitable tolling may apply where an appellant "has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Id.* The Secretary contends that the appellant has not satisfied this *Irwin* prong. The Federal Circuit, in three instructive opinions, has applied this *Irwin* prong.

In *Jaquay*, the Federal Circuit concluded that, where an appellant, during the 120-day judicial-appeal period, misfiles his motion for Board reconsideration with the same RO from which his claim originated, he "'exercise[s] due diligence in preserving his legal rights.'" *Jaquay*, 304 F.3d at 1287-88 (quoting *Irwin*, 498 U.S. at 96); *see Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991) (setting forth requirements for Court to have jurisdiction over appeal when appellant has filed motion for reconsideration of underlying Board decision before filing NOA with Court; such motion filed

with BVA within 120-day judicial-appeal period generally tolls judicial-appeal period for appeal to Court). The Federal Circuit held that, in such a situation, an appellant "trigger[s] equitable tolling" of the 120-day period within which to file a reconsideration motion with the BVA. *Jaquay*, 304 F.3d at 1289.

Subsequently, in *Santana-Venegas*, the Federal Circuit concluded that, where an appellant, during the 120-day judicial-appeal period, misfiles his NOA with the same RO from which his claim originated, he "'satisfies the [due] diligence requirement [so as to preserve his legal rights].'" *Santana-Venegas*, 314 F.3d at 1298 (quoting *Jaquay*, 304 F.3d at 1288). The Federal Circuit then held that such a misfiling of an NOA triggers equitable tolling of the 120-day NOA-filing period. *Id.* In so holding, however, the Federal Circuit stressed that the RO had not notified that claimant, until 70 days (which was after the 120-day appeal period had expired) after having received his NOA, that he should have filed that NOA with this Court. *See Santana-Venegas*, 314 F.3d at 1295-98 (also noting that appellant had acted upon that advice almost immediately by refiling his NOA with this Court and that there were VA policies on timely assistance and timely response (within 10 days of receipt) to all correspondence received by VA). The Federal Circuit again applied this *Irwin* prong in *Bailey (Edward)* and concluded that, where an appellant, during the 120-day judicial-appeal period, "attempts to file a[n NOA] by completing a document that is clearly intended to serve as a[n NOA] and . . . ha[ving] that document delivered to *the [RO] from which [his] claim originated* . . . [, he] is entitled to invoke the doctrine of equitable tolling." *Bailey (Edward)*, 351 F.3d at 1385 (emphasis added). Similar to *Santana-Venegas*, *supra*, the Federal Circuit refer to the fact that, although Bailey, within the 120-day appeal period (specifically, on the 107th day), had misfiled his NOA with the RO from which his claim originated, the RO had taken "no action with respect to that document until [nine months after receiving the document,]" and then only upon inquiry from Bailey's representative. *Id*. at 1383.

Further, under the second prong of *Irwin*, equitable tolling may be available where an appellant "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96. In applying this second *Irwin* prong, the Federal Circuit held in *Bailey (Harold)* that, "[g]iven the particular relationship between veterans and the government," equitable tolling could apply where, "[a]lthough there is no suggestion of misconduct," VA's conduct

misled a claimant "into allowing the filing deadline to pass." *Bailey (Harold)*, 160 F.3d at 1365; *see Cintron*, 13 Vet.App. at 257 ("cause and effect" relationship must exist, i.e, appellant relied to his own detriment on action that VA took, or should have taken but did not, and equitable tolling is not invoked if "the appellant's reliance on VA was not the cause of the late filing").

In addition, the Federal Circuit recently held that, in certain circumstances, "mental illness may justify the tolling of [38 U.S.C. §] 7266(a)'s 120-day period for appeal." *Barrett*, 363 F.3d at 1320. However, the Court notes that, in his pleadings, the appellant has not asserted that "the failure to file [an NOA] was the direct result of a mental illness that rendered him incapable of 'rational thought or deliberate decision making[]'" or "'incapable of handling [his] own affairs or unable to function [in] society." *Id*. at 1321 (internal citations omitted). Accordingly, the Court in this opinion will not address further any potential applicability of *Barrett, supra*, to this matter. Nevertheless, the appellant is free to raise any such argument in a motion for reconsideration that is supported by appropriate evidence. *See* U.S. VET. APP. R. 35(a).

With respect to the Secretary's argument that *Santana-Venegas* and *Jaquay* are inapposite because the instant matter does not involve a misfiled or defective pleading, the Court agrees. Those opinions explicitly apply to instances where a claimant's misfiled or defective pleading satisfied the first prong under *Irwin, supra*, of pursuing his judicial remedy. *See Santana-Venegas*, 314 F.3d at 1297-98; *Jaquay*, 304 F.3d at 1288. Here, there is no evidence that the appellant misfiled a pleading within the 120-day judicial-appeal period; the only NOA that has been documented as being received in this matter was received by the Court on June 5, 2002. *See* 38 U.S.C. § 7266(b) (appellant shall file NOA with Court). Specifically, although the Court notes that the appellant has provided copies of several telephone bills, dated between January and June 2002, and the e-mail exchange between him and Mr. Padilla on June 5 and 6, 2002, none of these documents constitute a filing within the judicial-appeal period. Thus, the appellant has not demonstrated that, prior to the expiration of the judicial-appeal period, he was pursuing his judicial remedies as to the January 18, 2002, BVA decision. *See Bailey (Harold),* 160 F.3d at 1364. Accordingly, the appellant has not satisfied the first prong of *Irwin*. *See Irwin,* 498 U.S. at 96; *Bailey (Harold), supra.*

With respect to equitable tolling under the second prong of *Irwin*, although the appellant argues that his past interactions with Mr. Padilla, as well as their communications between January

10

and June 2002, misled the appellant into believing that Mr. Padilla had filed his appeal, these arguments are unavailing because the Court cannot conclude that any documents in the materials before it demonstrate by a preponderance of the evidence, *see McNutt* and *Bethea*, both *supra*, that Mr. Padilla misled or induced the appellant into allowing the judicial-appeal period to expire. *See Brown v. West*, 13 Vet.App. 88, 91 (1999) (holding that, where allegation that appellant was tricked or induced by VA into allowing NOA-filing deadline to expire was not documented in materials before Court and where appellant receives notice of his appellate rights, *Bailey (Harold),* 160 F.3d at 1360, is inapposite). In this regard, the Court notes that in *Bailey (Harold)* the facts regarding VA's misleading conduct were undisputed whereas, here, the Secretary, through Mr. Padilla's Declaration, has provided evidence reflecting that no VA misconduct occurred and that the appellant was informed, as early as January 2002, that VA would not file an appeal on his behalf. *See Bailey (Harold),* 160 F.3d at 1361.

Moreover, the appellant's telephone bills dated from January to June 2002 do not reflect the substance of any conversation that he may have had with Mr. Padilla and there are no Report of Contact forms from that same time period; it does not appear that the appellant asserts that Mr. Padilla had any duty to complete Report of Contact forms. In this regard, although the VA Adjudication Procedure Manual, M21-1 (M21-1), Part III, paragraph 11.18(b), provides that "[a]ll information received by telephone from a claimant must be completely documented on . . . [a] Report of Contact[ form] or the equivalent," the Court cannot conclude that Mr. Padilla had any such duty. Even assuming that M21-1, Part III, paragraph 11.18(b), may be considered a substantive rule, *see Hayes v. Brown,* 5 Vet.App. 60, 67 (1993); *Fugere v. Derwinski*, 1 Vet.App. 103, 107 (1990), there are at least three reasons why that provision does not demonstrate that Mr. Padilla, a Management Analyst and Community Affairs Officer, had any duty to fill out a VA Form 119 after his contacts with the appellant. First, paragraph 11.18 is applicable to VA employees authorized to act under 38 C.F.R. § 3.100 (2003), which generally includes adjudicative personnel. *See* 38 C.F.R. § 3.100 (delegating to the Under Secretary for Benefits and supervisory or adjudicative personnel within Veterans Benefits Administration designated by the Under Secretary to "make findings and decisions under applicable laws, regulations, [and] precedents . . . as to entitlement of claimants to benefits under all laws administered by . . . [VA]"). There is nothing in the materials before the

11

Court to suggest that Mr. Padilla is an adjudicative personnel. Next, M21-1, Part III, Chapter 11, Subchapter III, the subchapter which contains paragraph 11.18, deals with "Use of Telephone, E-mail, and Fax for Claims Development." M21-1, Part III, SubCh. III. There is nothing in the materials before the Court to suggest that Mr. Padilla takes part in any claims development. Last, paragraph 11.18 appears to relate to instances where VA adjudicative personnel request information. *See* M21-1, Part III, para. 11.18 (a)(1)-(3). There is no evidence before the Court that reflects that Mr. Padilla requested information from the appellant. Thus, the Court cannot conclude that Mr. Padilla had a duty to fill out VA Form 119s with respect to his contacts with the appellant.

Further, Mr. Padilla's June 6, 2002, e-mail, which may indicate his erroneous belief that June 16, 2002, was the last day of the appellant's judicial-appeal period, was transmitted more than two weeks after the May 20, 2002, expiration of the judicial-appeal period. Thus, because the e-mail exchange occurred after the expiration of the judicial-appeal period, the appellant has not demonstrated that that June 2002 e-mail exchange misled or induced him into allowing the judicial-appeal period to expire. *See Cintron*, 13 Vet.App. at 257; *Brown, supra*. Inasmuch as that e-mail could have a bearing on Mr. Padilla's credibility on the ground that it documents his efforts to assist the appellant in filing an appeal after Mr. Padilla purportedly had declined to file the appeal (*see* Declaration at 1-2), the Court cannot conclude that the appellant's and his wife's statements are more credible than Mr. Padilla's statements. *See Stokes, supra.* In this regard, the Court notes, with respect to the appellant's credibility, that he has alleged that he sent to the Court "an appeal letter," Appellant's June 2002 Resp. at 1, but that the Court has not received any such filing. Similarly, the appellant initially asserted that Mr. Padilla had "vowed to work on [the appellant's] appeal from a different angle" but then asserted that Mr. Padilla had stated that he simply would send a letter on the appellant's behalf after Mr. Padilla had related to the appellant that he never had processed an appeal to the Court. Appellant's June 2002 Resp. at 1-3.

The dissenting Judge, in concluding that the appellant's statements are more credible than Mr. Padilla's, fails to account for the above-mentioned concerns regarding the appellant's statements. Instead, he relies on evidence of limited probative value to conclude that "the facts . . . weigh significantly more in favor of [the appellant's] recollection of events[] than they weigh in favor of Mr. Padilla's." *Post at __*. Specifically, although the appellant may have visited Mr. Padilla and

made telephone calls to his office, the Court cannot conclude that the appellant's version of what occurred during any visit or telephone call to Mr. Padilla is more credible than Mr. Padilla's version of events. In this regard, the Court notes that, at best, the evidence as to what occurred is in equipoise.

The equipoise standard of 38 U.S.C. § 5107(b), however, applies only to the Secretary's, not the Court's, determinations; the applicable standard here is the preponderance of the evidence standard under which it is the appellant's burden to demonstrate that he was misled or induced into allowing the judicial-appeal period to expire. *See* 38 U.S.C. § 7266(a); *McNutt* and *Bethea,* both *supra*. Consequently, the Court concludes that the appellant has not met this burden nor the burden of demonstrating by a preponderance of the evidence that his NOA was timely filed. *See id*. Therefore, the Court lacks jurisdiction to review this appeal.

### III. Conclusion

Upon consideration of the foregoing and the parties' pleadings, this appeal is DISMISSED for lack of jurisdiction.


KASOLD, J., *dissenting*: This case falls squarely within the equitable tolling parameters established in *Bailey v. West*, 160 F3d 1360 (1998), which held that, even without a finding of any misconduct on the part of an employee of the Department of Veterans Affairs, the time to file an appeal is equitably tolled when the veteran has been "lulled . . . into accepting and relying upon the advice and aid of the government" and thereby "misled . . . into allowing the filing deadline to pass." *Id* at 1365. Mr. Tavares was so lulled in this case.

According to Mr. Tavares, Mr. Padilla had been helping him with his claim since July 2001. Mr. Tavares submitted telephone records reflecting numerous calls from July 2001 through July 2002 to Mr. Padilla's telephone number at the San Diego Regional Office. He also submitted a copy of a September 2001 letter to Mr. Padilla waiving his right to a Board hearing. On January 22 or 23, 2002, the day Mr. Tavares received the decision of the Board denying his claim, he and his wife drove over 60 miles to meet with Mr. Padilla to discuss an appeal. During that meeting, Mr. Tavares asserts that he was told by Mr. Padilla that he would "work on his appeal from a different angle," and

Mr. Tavares came away from that meeting with the understanding that Mr. Padilla "would see that the claim went into the Court of Veteran's Appeal and [that Mr. Padilla] would send a letter of support."[1]

Mr. Tavares states that in March 2002 he was advised by Mr. Padilla that his appeal had been filed and assigned a docket number, and that Mr. Padilla agreed to "go digging" in the file for the docket number and provide it to Mr. Tavares. Mr. Tavares further states that he continued to maintain telephone contact with Mr. Padilla over the next several months trying to get his docket number and information about his appeal; this included numerous voice messages. In a May conversation with Mr. Padilla, Mr. Tavares states that he was told that it would take 8 to 9 months before his case would be heard.

On June 5, 2002, when he was advised by Mr. Padilla that some documents needed to be signed, Mr. Tavares and his wife undertook the 60-mile trip that same day to meet with Mr. Padilla and complete another Notice of Appeal and Declaration of Financial Hardship, which were then faxed to the Court by Mr. Padilla. Mrs. Tavares submitted an affidavit dated September 17, 2002, supporting the statements of her husband.

In contrast to Mr. Tavares' statements, Mr. Padilla does not mention assisting Mr. Tavares as early as July 2001, implying that he first met Mr. Tavares in January 2002. While Mr. Padilla states that he told Mr. Tavares at the January meeting that he was not able to help him file his appeal, he admits to helping him do exactly that in June, although no explanation is provided as to why such assistance was permitted in June but not in January. Mr. Padilla also acknowledges talking to Mr. Tavares a few weeks after the January meeting, although he states that he told Mr. Tavares that he could neither provide nor obtain information about Court time frames; strangely, Mr. Padilla makes

---

[1] The majority notes that Mr. Tavares asserted that he sent a copy of his appeal to the Court in January 2001, and further notes that the letter was never received by this Court. This seems inapposite to the issue under consideration, as lack of proof of mailing an appeal does not translate into lack of credibility of the veteran who says he mailed it. Documents get lost in the mail and even lost at this Court. *See e.g., Evans v. Principi*, 17 Vet.App.41, 42 (2003) (lost or misfiled document). At best, Mr. Tavares' statement that he mailed a copy of an appeal to the Court is simply a neutral fact given the nature of the issue before the Court; i.e., whether equitable tolling is applicable in this case because Mr. Tavares was lulled by the government into letting the filing deadline pass. *See Bailey*, 160 F3d at 1365. I note that the mailing of a copy of an appeal is not inconsistent with Mr. Tavares' repeated statements, and the indications of all the hard facts in this case, that Mr. Padilla was assisting Mr. Tavares in filing his appeal.

no mention of the numerous calls made to him by Mr. Tavares.[2]  Mr. Padilla states that he also told Mr. Tavares on June 5, 2002, that he had no way of contacting the Court and that he was concerned about the appeal because the claims file was still in the office.  Mr. Padilla confirms that Mr. Tavares came to his office that same day and that they sat down together and completed another set of forms, and that Mr. Padilla faxed those forms to the Court.

Without ascribing bad faith to either party, the facts, in my opinion, weigh significantly more in favor of Mr. Tavares' recollection of events, than they weigh in favor of Mr. Padilla's.  *See Stokes v. Derwinski*, 1 Vet.App. 201, 203-04 (1991) (authorizing the Court to find facts for jurisdictional purposes).  It is undisputed that Mr. Tavares drove over 60 miles to meet with Mr. Padilla immediately upon receipt of his notice of the Board decision and again immediately upon learning that an appeal had not been filed, and that numerous phone calls were made by Mr. Tavares to Mr. Padilla's office phone number.  These actions evidence Mr. Tavares' interest in appealing his claim and his belief that he would receive assistance from Mr. Padilla.  Indeed, Mr. Tavares made at least 19 phone calls to Mr. Padilla  from the date he met with him on January 22 or 23, 2001, to discuss the appeal through June 5, 2001, when the appeal was filed by Mr. Padilla on behalf of Mr. Tavares,[3] and there is no reasonable, alternative explanation proffered by the Secretary or Mr. Padilla, or consistent with the facts in this case, other than that Mr. Tavares believed Mr. Padilla "would see that the claim went into the Court of Veteran's Appeal and [that Mr. Padilla] would send a letter of support."  It is also undisputed that Mr. Padilla helped Mr. Tavares complete the appeal forms and that he faxed them to the Court.  This confirms, at least in the end, Mr. Tavares' belief regarding assistance from Mr. Padilla.  The fact that Mr. Padilla helped complete the appeal forms and fax them to the Court also weighs against the recollection of Mr. Padilla that he had repeatedly told Mr. Tavares that he could not assist him and that he had no way of contacting the Court; indeed, it

---

[2]Although not dispositive in my opinion, Mr. Padilla did not document any of his conversations with Mr. Tavares even though apparently required to do so by the Veterans Benefits Administration's M21-1 Manual. *Cf. Fugere v. Derwinski*, 1 Vet.App 103, 107 (1990) (provisions in the M21-1 Manual that do not merely clarify or explain an existing rule or statute have the force of law); *McCormick v. Gober*, 14 Vet.App 39, 46-47 (2000) (substantive provisions in the M21-1 Manual are enforceable against the Secretary in this Court).

[3] Phone records submitted by Mr. Tavares show that he also called Mr. Padilla numerous times before and after these dates.

weighs in support of Mr. Tavares' understanding that Mr. Padilla "would see that the claim went into the Court of Veteran's Appeal [sic] and [that Mr. Padilla] would send a letter of support."

Mr. Tavares' behavior in relying on Mr. Padilla's assistance to file his claim also is consistent with the documentation he produced and the statements he and his wife submitted to this Court, whereas Mr. Padilla's behavior in actively filing the appeal in June 2001 is in direct contradiction to the statements that he claims to have made to Mr. Tavares and the statement that he made to this Court regarding his ability to provide assistance to Mr. Tavares. Mr. Padilla's failure to address the extended contact and working relationship he had with Mr. Tavares from June 2001 through June 2002 and beyond, and his failure to address the many phone calls made to him between January and June 2002, also weigh against the accuracy of his recollection of events. In short, Mr. Padilla's statement to this Court is inherently inconsistent with his behavior, his previous assertions, his own statement, and the documented facts.

Overall, the evidence supports a conclusion that Mr. Tavares has demonstrated by a preponderance of evidence that he was "lulled . . . into accepting and relying upon the advice and aid of the government" and thereby "misled . . . into allowing the filing deadline to pass." *See Bailey* at 1365. Finally, the Secretary has not alleged, and I fail to perceive, any prejudice to the Secretary by a finding that equitable tolling is applicable in this case. *See Barrett v. Principi*, 363 F.3d 1316, 1320 (2004).

For the reasons stated above, I respectfully dissent.