KASOLD, Judge,
with whom HAGEL, Judge, joins, concurring in part and dissenting in part:
The issue before the Court is whether veterans Rios and Collins complied with section 38 U.S.C. § 7266(c) such that their appeals may be heard by the Court. I believe that they have fully complied with the statute and that the common law mailbox rule serves to permit the proper exercise of our review authority over these appeals. Accordingly, I respectfully dissent from the Court’s holding today that the common law mailbox rule does not apply to NOAs filed with the Court.[2]
I. SECTION 7266
Congress promulgated the predecessor to section 7266, then 38 U.S.C. § 4066, in 1988. See Act of Nov. 18, 1988, Pub.L. 100-687, § 301(a), 102 Stat. 4116, § 4066, renumbered and amended at Act of May 7, 1991, Pub.L. 102-40, § 402(b)(1), (d)(1), 105 Stat. 238, 239. Under the original section 4066, an NOA had to be “filed” within 120 days after the date on which the notice of the Board decision was mailed. 38 U.S.C. § 4066(a) (1988). In response to the Court’s harsh interpretation of the rule in DiDonato v. Derwinski, 2 Vet.App. 42 (1991), Congress amended section 7266 (formerly section 4066), which, as relevant to this case, is as it currently stands.
Pursuant to section 7266, an “appellant shall file a notice of appeal under this section by delivering or mailing the notice to the Court.” 38 U.S.C. § 7266(a), (b) (emphasis added); see also Veterans Benefits Improvements Act of 1994, Pub.L. 103-446, § 511(a), 108 Stat. 4670 (1994). Thus, under the plain wording of the current statute, an appellant has two options with regard to filing an NOA: delivering it or mailing it. The use of the term “or” indicates these are independent actions. See Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (stating that “[cjanons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise”).
Thus, an appellant who mails his NOA has undertaken the second option and is not delivering it to the Court in the sense of personal delivery or use of a commercial delivery service. See Mapu v. Nicholson, 397 F.3d 1375, 1381 (Fed.Cir.2005) (stating that “[i]t is clear that Congress wanted the postmark rule to apply only to a notice of appeal that was mailed using the Postal Service.”); see also 140 Cong. Rec. 28,849 (1994) (stating that the postmark rule would not be broadly applicable, but that only “legible United States Postal Service postmarks would be sufficient” and that “if *120 a [notice of appeal] is delivered to the Court (for example, by private courier or delivery service), it would be considered timely filed if it is received by the Court within the 120-day limit established by Congress.”)- If the NOA is delivered, i.e., not mailed, the date of delivery is the date of filing. See 38 U.S.C. § 7266(c)(1). On the other hand, if the NOA is mailed, it is deemed filed on the date of the United States Postal Service (USPS) postmark, provided that the postmark is legible. See 38 U.S.C. § 7266(c)(2).
The clear intent of Congress was to provide appellants the full benefit of the 120-day filing period if they mailed their NOA, provided the postmark was legible. See 38 U.S.C. § 7266. Although the statute does not address what happens when a mailed NOA has an illegible postmark or is lost by the USPS, this lack of explicit attention does not evince intent to deny claimants in these situations a hearing on their appeal. Congress does not write upon a clean slate, and is “understood to legislate against a background of common-law ... principles.” Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 110-11, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991); see also Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 277 (8th Cir.1983) (stating that Congress acts with knowledge of existing law, and that “absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction”).
II. THE COMMON LAW MAILBOX RULE
The common law mailbox rule has been in existence for well over a century, see Howard v. Daly, 61 N.Y. 362 (1875); Huntley v. Whittier, 105 Mass. 391 (1870); Tanner v. Hughes, 53 Penn. St. 289, 1867 WL 7388 (1867); Callan v. Gaylord, 3 Watts. 321, 1834 WL 3372 (1834), and was given full judicial imprimatur by the U.S. Supreme Court over 120 years ago, in Rosenthal v. Walker, 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395 (1884). Under the common law mailbox rule, “if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed.” Rosenthal, 111 U.S. at 193, 4 S.Ct. 382; see also Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); Lewis v. United States, 144 F.3d 1220, 1222 (9th Cir.1998); Wood v. Comm’r, 909 F.2d 1155, 1161 (8th Cir.1990). This mailbox rule is based on the presumption that the officers of the government will do their duty in the normal course of business. See Rosenthal, swpra; see also United States v. Armstrong, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (“ ‘[I]n the absence of clear evidence to the contrary, courts presume that [Government agents] have properly discharged their official duties.’ ”); United States v. Chem. Found., Inc., 272 U.S. 1, 14-15, 47 S.Ct. 1, 71 L.Ed. 131 (1926) (“The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties”).
III. APPLICABILITY OF THE COMMON LAW MAILBOX RULE
The Court has never considered the application of the common law mailbox rule until now, and therefore has never excluded the applicability of the common law mailbox rule. The majority’s reliance on the fact that the “Court has never applied the common-law mailbox rule” as an underlying basis for rejecting its application *121 in these cases is misplaced. See United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952) (holding that an issue not “raised in briefs or argument nor discussed in the opinion of the Court” cannot be taken as “a binding precedent on this point”); Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411 (1925) (stating that “[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not considered as having been so decided as to constitute precedents.”).
Inasmuch as this is an issue of first impression for the Court, the proper analysis begins with the presumption that the common law mailbox rule is applicable, absent some evident statutory abrogation thereof. See Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952); see also Astoria, supra. Contrary to the majority’s discussion, there is absolutely no congressional intent to abrogate the common law rule as it applies to the filing of NO As with the Court. There is certainly no explicit abrogation of the common law mailbox rule, see Midlantic Nat’l Bank v. N.J. Dep’t of Envtl. Prot., 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (“The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.”).
Moreover, absent evident abrogation, the common law mailbox rule would be abrogated only if application of the statute would render application of the common law mailbox rule useless, see Astoria, 501 U.S. at 108, 112-13, 111 S.Ct. 2166 (stating that when a common law principle is well established it may be taken as a given that “Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident” and finding by implication, statute contravened common law after finding that application of the common law would render useless the statute at issue), or there is statutory purpose to the contrary, see Isbrandtsen, 343 U.S. at 783, 788-89, 72 S.Ct. 1011 (“statutes which invade the common law ... are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident” and finding Congress implicitly limited deductions and set-offs to those listed in statute); see also United States v. Texas, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) (stating that in order to abrogate a common law principle, the statute must “speak directly” to the question addressed by the common law); Milwaukee v. Illinois, 451 U.S. 304, 315, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (same). Neither situation applies here.
The section 7266 statutory mailbox rule, which deems an NOA as filed on the date it is mailed if the USPS postmark is legible, does not render application of the common law mailbox rule useless or evidence an intent to exclude application of the common law mailbox rule. To the contrary, the common law mailbox rule dovetails with section 7266 and addresses the situation where mail is lost or mishandled such that it reaches its destination outside the normal course of business — the very situations not covered by the section 7266 statutory mailbox rule. Under the common law mailbox rule, mail that arrives at the Court with an illegible postmark or is otherwise reported as not received by the Court, can be shown to have been placed in the USPS within sufficient time to be received by the Court within the 120-day filing period and is presumed received absent clear evidence to the contrary, and therefore filed, on the date of regular business delivery. See Sorrentino v. IRS, 383 F.3d 1187, 1194 (10th Cir.2004) *122 (applying the common law mailbox rule to allow for timely filing); Anderson v. United States, 966 F.2d 487, 492 (9th Cir.1992) (same); Wood, supra (same); see also Lewis v. United States, 144 F.3d 1220, 1221-22 (9th Cir.1998) (finding that when a postmarked envelope was not preserved by the IRS, a taxpayer may use the common law mailbox rule to prove timely receipt).
Moreover, application of the common law mailbox rule not only dovetails with the statutory mailbox rule in section 7266, it is wholly consistent with Congress’ express requirement that an NOA be filed by delivering it to the Court or mailing it to the Court. It would be ironic indeed, if Congress on the one hand explicitly authorized use of the USPS but intended that a claimant who mailed his NOA in more than sufficient time for it to be received by the Court, should be denied an appeal because the USPS, a government agency, lost it. See Baker v. Runyon, 114 F.3d 668 (7th Cir.1997) (stating that the USPS is a government agency). The irony of such an intent is heightened when one considers the fact that the presumption of regularity underpins the statutory start of the 120-filing period on the date the Board decision is mailed, as opposed to the date it is received by the claimant. See Ashley v. Derwinsky 2 Vet.App. 307, 308-09 (1992) (quoting United States v. Chem. Found., Inc., 272 U.S. 1, 14-15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)) (stating that there is a presumption of regularity under which it is presumed that government officials “have properly discharged their official duties”); see Crain v. Principi, 17 Vet.App. 182, 190 (2003) (noting that the Court has routinely applied this presumption of regularity and its caselaw regarding the mailing requirements under 38 U.S.C. § 7104(e) to RO mailings to VA claimants); Woods v. Gober, 14 Vet.App. 214, 220 (2000) (“The Court has held that there is a presumption of regularity that the Secretary properly discharged his official duties by mailing a copy of a VA decision to the last known address of the appellant... .”).[3] I cannot ascribe an intent to Congress that the Government be permitted the benefit of the presumption of regularity with regard to its mailings, but our Nation’s veterans and others eligible for VA benefits be denied its equivalent application in the form of the common law mailbox rule. See Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (“interpretive doubt is to be resolved in the veteran’s favor”); Boyer v. West, 210 F.3d 1351, 1355 (Fed.Cir.2000); McKnight v. Gober, 131 F.3d 1483, 1485 (Fed.Cir.1997).
IV. OTHER CONCLUSIONS
The majority’s conclusion that the Federal Circuit’s decision in Mapu v. Nicholson, 397 F.3d 1375 (Fed.Cir.2005), forecloses the application of the common law mailbox rule is also misplaced. Although the Federal Circuit stated in Mapu that an NOA must be received or “deemed to be received” by the Court within the 120-day filing period, this holding cannot be taken out of context of the facts and analysis of that case, which did not involve the common law mailbox rule or the USPS and therefore cannot serve to foreclose application of the common law mailbox rule. See Grantham v. Brown, 114 F.3d 1156, 1158 (Fed.Cir.1997) (“It is axiomatic that the language in [the present case] must be read in light of the facts and issues that were before the court when the language was written”); see also L.A. Tucker Truck Lines, Inc. and Webster, both supra. *123 Moreover, unlike the situation in Mapu, where an application of the statutory mailbox rule in section 7222 to a Federal Express delivery would be in direct conflict with the statute, which explicitly refers to the USPS, application of the common law mailbox rule presents no conflict, as discussed above.
Although I disagree with the majority’s conclusion that our filing statute cannot be favorably compared to the Tax Court’s filing statute, which also has a statutory mailbox rule, that is not the point. At least five Courts of Appeal have examined 26 U.S.C. § 7502, the Tax Court’s filing statute. Although the first two Circuits to do so held that its statutory mailbox rule is exclusive of the common law mailbox rule, see Deutsch v. Comm’r, 599 F.2d 44 (2nd Cir.1979) (holding that the legislative history of section 7502 indicated that the statute only applied if the petition was actually delivered to the tax court); Miller v. United States, 784 F.2d 728 (6th Cir.1986) (holding that section 7502(a), “both by its terms and as revealed in the legislative history, applies only in cases where the document is actually received by the I.R.S. after the statutory period”), neither case considered the longstanding judicial principle that “statutes which invade the common law ... are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.” Isbrandtsen, 343 U.S. at 783, 72 S.Ct. 1011; see also Astoria, 501 U.S. at 108, 111 S.Ct. 2166. In contrast, three of the Circuits considered this principle and determined that the statutory mailbox rule was not exclusive of, and did not abrogate, the common law rule. See Sorrentino, 383 F.3d at 1187 (finding that the production of a registered, certified, or electronic mail receipt was not the only means by which a taxpayer could establish timely delivery but declined to endorse the common law mailbox rule based solely upon a taxpayer’s uncorroborated self-serving testimony of mailing); Anderson, 966 F.2d at 492 (“the language of [section] 7502 does not set forth an exclusive limitation on admissible evidence to prove timely mailing and does not preclude application of the common law mailbox rule”); Wood, 909 F.2d at 1160 (noting that Congress is presumed to have known of the common law presumption of delivery and further stating: “When interpreting a statute, we must consider the statute in light of judicial concepts existing before it ... was enacted. ‘The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.’ ”) (quoting Midlantic Nat’l Bank, 474 U.S. at 501, 106 S.Ct. 755).[4]
Finally, to the extent the majority compares section 7266 with the Federal Rules of Appellate Procedure (FRAP), to which some courts have held that the mailbox rule does not apply, this comparison is misplaced. The specific language used in section 7266 directs an appellant to file an NOA by “delivering or mailing the notice to the Court” (38 U.S.C. § 7266(b)), while the language of the FRAP merely states “an appeal ... may be taken only by filing a notice of appeal with the district clerk” within the specified time limits. See Fed. R.App. P. 3, 4. The FRAP give no guidance as to how an appellant may file an NOA, while section 7266 specifically allows for only two types of filing, and one of them is by mail. Moreover, while the Circuit *124 Courts that employ the FRAP do not seem to permit application of the common law mailbox rule as such, many Circuits have found that failure by the USPS to properly deliver the mail in due course constitutes either good cause or excusable neglect to permit an extension in the filing of an NOA. See, e.g., Scarpa v. Murphy, 782 F.2d 300 (1st Cir.1986) (finding “inexcusable neglect of the Post Office to take more than five days ... to transmit an adequately addressed letter three miles”); Sanchez v. Board of Regents of Texas S. Univ., 625 F.2d 521 (5th Cir.1980) (finding that “reliance on the normal course of delivery of mail is reasonable and may be the basis for a court to excuse otherwise untimely filing”).
V. APPLICATION TO THE FACTS IN THIS CASE

A. Rios

In order to establish that he timely mailed his NOA, Mr. Rios presents to the Court a copy of his November 6 NOA, a copy of a “Page of Registry of Sent Correspondence” from PRPAVA, and two affidavits from Mrs. Santa Virgen Cruz Carrion attesting to the mailing procedures at PRPAVA. In the affidavit, she describes the normal mailing procedure of PRPAVA and asserts that on the afternoon of November 6, 2003, she followed the normal mailing procedures to mail Mr. Rios’ NOA to the Court and to the General Counsel. Mrs. Cruz Carrion attests that she personally mailed Mr. Rios’ NOA by placing it in a U.S. mailbox on November 6, 2003. She further states that she logged the mailing of this document on the Page of Registry of Sent Correspondence, and the Court notes that there is a log of a mailing to the Court on behalf of Mr. Rios on the submitted registry. In addition to sending a copy to the Court, Mrs. Cruz Carrion states that a copy was also sent to the VA Office of General Counsel; this too is noted on the registry. The mailing address on the copy of the November 6 NOA is the correct address for this Court. In addition to the evidence of mailing submitted by Mr. Rios, he timely followed up his mailing with an inquiry in February 2004 regarding the status of his NOA.
Taken collectively, the evidence in this case, which includes affidavits of both Mr. Rios and a third party, contemporaneous business records, and a timely follow up regarding the status of the NOA, passes the high standard of proof of mailing necessary to invoke the common law mailbox rule presumption of delivery and thus shifts the burden of proving non-receipt to the Secretary. See Sorrentino, supra; see also Knickerbocker Life Ins. v. Pendleton, 115 U.S. 339, 347, 6 S.Ct. 74, 29 L.Ed. 432 (1885) (adopting the rule which “allows usage and the course of business to be shown for the purpose of raising a prima facie presumption of fact in aid of collateral testimony”), Anderson, supra; Wood, supra; Village of Kiryas Joel Dev. Corp. v. Ins. Co. of N. Am., 996 F.2d 1390, 1394 (2d Cir.1993) (finding sufficient to create presumption an employee’s statement of customary office procedure plus record indicating that employee mailed letter); Godfrey v. United States, 997 F.2d 335, 338 (7th Cir.1993) (finding that to invoke the presumption of delivery, a party may “either present evidence of actual mailing such as an affidavit from the employee who mailed the [return] or present proof of procedures followed in the regular course of operations which give rise to a strong inference that the [return] was properly addressed and mailed.”); Myers v. Moore-Kile, 279 F. 233, 235 (5th Cir.1922) (using evidence that a document was mailed in the regular course of business as proof that it was actually mailed). Under the “known course of business in” the USPS, *125 see Rosenthal, 111 U.S. at 193, 4 S.Ct. 382, the November 6, 2003, NOA would have been received by the Court on November 10, 2003, well before the end of the 120-day filing period, which was February 13, 2004. See United States Postal Service, at http//www.usps.com (last visited Sept. 20, 2005).
The only evidence the Secretary offers to rebut the presumption of delivery is the fact that the NOA was never logged in by the Court. During oral argument, the Secretary also contended that PRPAVA has mailed documents to the wrong address in the past. See Santana-Venegas v. Principi 314 F.3d 1293 (Fed.Cir.2002). That type of evidence is insufficient to rebut the presumption of delivery under the common law mailbox rule. See Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1241 (11th Cir.2002) (stating that “a party’s failure to uncover an item, which it was presumed to have received, does not mean that it never received the item and does not rebut the presumption of delivery”), Arnold v. Wood, 238 F.3d 992, 995 (8th Cir.2001) (stating that “the presumption of accuracy in favor of docket entries may be rebutted only by a stronger presumption such as the mailbox rule”); In re Nimz Transp., Inc., 505 F.2d 177, 179 (7th Cir.1974) (holding, in a case where petitioners alleged that they mailed wage claims to the clerk of the district court, that “the fact that the clerk’s files did not contain the proof of claims” was “by itself insufficient to rebut the presumption of receipt”); Jones v. United States, 226 F.2d 24, 27 (9th Cir.1955) (“The showing that a search of the pertinent files in the [addressee’s] office revealed no record of the [relevant documents] having been filed is a purely negative circumstance, insufficient ... to rebut the presumption of delivery.”); see also Tavares v. Principi 18 Vet.App. 131, 141 n. 1 (Kasold, J., dissenting) (“Documents get lost in the mail and even lost at this Court.” (citing Evans v. Principi, 17 Vet.App. 41, 42 (2003))).

B. Collins

To establish that he mailed his April 30, 2004, NOA, Mr. Collins submitted to the Court an affidavit signed by Ms. Vicki L. Colvin, Mr. Collins’ counsel’s legal assistant, that describes the actions she took on April 30, 2004, to mail Mr. Collins’ NOA to the Court. She states that on April 30, 2004, she mailed Mr. Collins’ NOA to the Court from the Brentwood, Tennessee, Post Office via First Class Mail. She further states that she retained a copy of the sales receipt issued for that transaction. A copy of the sales receipt issued by the Brentwood, Tennessee, Post Office is attached to her affidavit and reflects that on April 30, 2004, mail was sent from that office via First Class mail (paid postage of forty-nine cents) to “Washington DC, 20004.” Mr. Collins filed a notice of appearance on September 24, 2004, lending credence to an earlier filing of an NOA. Given the totality of the evidence in this case, which includes a third party affidavit, a copy of a sales receipt from the mailing on April 30, 2004, and a timely filing of a notice of appearance, the evidence is sufficient to give rise to the high standard of proof to raise the presumption of delivery under the common law mailbox rule and to shift the burden of proving non-receipt to the Secretary. See Sorrentino, Anderson, and Wood, all supra. Under the “known course of business in” the USPS, see Rosenthal, 111 U.S. at 193, 4 S.Ct. 382, the April 30, 2004, NOA would have been received by the Court on May 4, 2004, which was the last day of the 120-day filing period. See United States Postal Service, at http//www.usps.com (last visited June 6, 2006).
As with Mr. Rios, the only evidence the Secretary offers to rebut the presumption *126 of delivery is the fact that the NOA was never logged in by the Court. This evidence is insufficient to rebut the presumption of delivery under the common law mailbox rule. See Barnett, Arnold, In re Nimz Transp., Inc., and Jones, all supra.
VI. CONCLUSION
Both Mr. Rios and Mr. Collins complied with section 7222 and filed their NOAs by mailing them with the USPS such that the NOAs should have been received by the Court in the normal course of business well within the 120-day filing period. The common law mailbox rule creates a presumption that these NOAs were so received, and that rule was not expressly or impliedly abrogated by statute, and the presumption of delivery was not rebutted. Accordingly, I would find that the NOAs in these cases were timely filed, and proceed to exercise the Court’s jurisdiction to review the appeals.

. I concur with the majority that the circumstances of these cases do not warrant application of the statutory mailbox rule or equitable tolling for extraordinary circumstances.

. Although the common law mailbox rule is not addressed in any of the cases cited in association with this footnote, it is apparent that it underlies the presumption of regularity attached to the mailing of the Board decision.

. The Federal Circuit has not yet addressed in a precedential opinion the applicability of the common law mailbox rule to the Tax Court's filing statute. See Davis v. United States, 230 F.3d 1383 (Fed.Cir.2000).